This is a suit in which plaintiff seeks to recover damages resulting from the death of her husband in an automobile collision allegedly caused by the negligence of the defendant, Larry Balthazar. In addition to the claim for damages, plaintiff's petition also seeks to set aside an allegedly simulated sale of the property made by the defendant, Larry Balthazar, to his brother, Bernie Balthazar, who is joined as a defendant.
This case was consolidated for trial with another arising out of the same accident, styled Fannie W. Roberson v. Larry Balthazar et al., La. App., 32 So.2d 482.
After trial on the merits there was judgment in favor of plaintiff, Minevia Rachal, and against the defendant, Larry Balthazar, in the amount of $4,000.00. There was further judgment in favor of the plaintiff and against the defendants, Larry Balthazar and Bernie Balthazar, setting aside, voiding and annulling the pretended sale of property, both real and personal, purported to have been made by Larry Balthazar to Bernie Balthazar by act dated the 25th day of February, 1946, and declaring the property described to be subject to a lien and privilege in favor of plaintiff by preference and priority over all other creditors save and except those holding written liens recorded prior to the filing of this suit. From this judgment defendant, Larry Balthazar, devolutively prosecutes this appeal.
There is no dispute as to the pertinent facts in connection with the accident, which is the basis of this suit, all of which have been conclusively established.
At about 2:30 o'clock A.M. on the morning of February 25, 1946, plaintiff's husband, Joe Sompayrac, was driving his 1925 T-Model Ford truck south on Highway 20 between Natchitoches and Natchez, Louisiana. Sompayrac was accompanied by a neighbor, John Roberson, husband of the plaintiff in the companion suit above noted, and a midwife by the name of Florence Johnson. Sompayrac's truck had neither headlights nor tail-light, the only light on the vehicle at the time of the accident being an ordinary lantern which was hanging on the left side of the truck at a point in or near the doorway of the cab.
The defendant, Larry Balthazar, driving a passenger car south on the same highway at a speed, according to his own testimony, of about 40 miles an hour, was blinded by the headlights of an approaching automobile. Despite this fact Balthazar did not decrease his speed, failed to see the Sompayrac truck until he was within 8 or 10 feet of the rear thereof, and as a result his car crashed into the rear of the truck with disastrous and tragic effect. Sompayrac was instantly killed by the crash, and Roberson, fatally injured, died, without regaining consciousness, on March 7, 1946. The woman, Florence Johnson, miraculously escaped, apparently without serious injury insofar as is disclosed by the record.
The sole question presented is whether or not the defendant's operation of his automobile under the circumstances was the proximate cause of the accident. We find not the slightest difficulty in resolving this question, as did the district Judge, in the affirmative.
[1, 2] As a practical proposition it must be conceded that the use of highways by vehicles traveling at night without lights constitutes a particularly dangerous menace to vehicular traffic. But it has been definitely established by the jurisprudence of this State that the driver of an automobile is required to maintain such control thereof as will permit him to bring the same to a stop, if necessary, within the range of his lights. The undisputed facts in this case bring it within the purview of this rule. The testimony of the defendant himself was more than sufficient to convict him of negligence. He testified that at the rate he was traveling he would have required a distance of approximately 100 feet to bring his automobile to a stop; that he was blinded by the lights of an approaching automobile; that he did not reduce his speed; that he did not see the truck until the approaching car had passed, or was passing, at which time he was only 8 or 10 feet behind the truck and it was impossible to avert the collision. *Page 485 
The facts in the case of Pepper v. Walsworth, 6 La. App. 610, are almost identical with those in the instant case. In the course of its opinion the Court stated:
"In the absence of any testimony to the contrary, we assume that defendant's car was properly equipped with headlights. Therefore, if it had not been for the blinding lights on the approaching car the driver would have seen plaintiff's car in time to avoid striking it, even though no lights appeared on the rear end, for it was on the open road ahead of him as he approached.
"The road, so far as the testimony discloses, is straight, and there was nothing to keep the driver from seeing the car ahead of him, even though it had no tail light, except the blinding lights of the approaching car.
"The question then arises whether it was negligence for the driver to meet this approaching car when he was blinded by its lights, at a speed of 25 miles an hour?
"We think it was.
[3] "It was not only negligence, it was reckless driving. The driver of an automobile has no right to assume that the road before him is open, and to proceed ahead without regard to the safety of those who may be therein. To proceed ahead when one is utterly blinded, as the driver of this car says he was, at a speed of 25 miles an hour, is the grossest kind of negligence.
[4] "When a driver finds that he is unable to see the road ahead of him, for any reason whatever, whether blinded by bright lights, smoke, dust, fog or for any other reason, it is his duty to at least bring his car under such control that it can be stopped in a moment in case of an emergency, and in extreme cases it is his duty to stop."
We think the above is a clear statement of the law as established and maintained by the jurisprudence of this State, and, as we have stated, the facts related are almost identical with those of the case before us. In this case, the road was straight for a distance of several miles in the vicinity of the place of the collision. The defendant, Balthazar, whose headlights were in good working order, was driving at a speed of 40 miles or more per hour, far in excess of the 25 miles per hour speed which the Court in the Pepper case, supra, held to constitute reckless driving under similar circumstances.
[5] No serious argument is advanced by counsel for either party as to the quantum of damages asserted in this case, and we find nothing in the record which would indicate the sum fixed to be either inadequate or excessive. The sole question which remains for our consideration is with reference to that portion of the judgment which sets aside, as simulated, a purported sale of property made by the defendant, Larry Balthazar, to his brother, Bernie Balthazar. This phase of the case was not discussed by our learned brother of the district Court in his written assignment of reasons for the judgment rendered.
The undisputed facts in connection with this purported sale show that on the very day of the accident, that is, February 25, 1946, the defendant, Larry Balthazar, executed a deed conveying his entire interest in certain property, real and personal, to his brother, Bernie Balthazar, for a recited consideration of $1,800.00 cash. This instrument was filed and recorded on the following day, February 26, 1946. The consideration, nor any part thereof, was ever paid by the purchaser. Aside from the coincidence of dates and the failure of consideration, the attempted substantiation of the good faith and validity of this instrument by the testimony of the parties thereto, as adduced upon trial of this case, is so weak and unconvincing as to be incredible and unworthy of belief. We find no difficulty in concluding that the judgment of the district Court decreeing this purported sale to be a simulation and ordering the same set aside, voided and annulled was correct.
[6] However, we find no authority in law for that part of the judgment which restricted the declaration of nullity of this sale to the plaintiffs in the damage actions and recognized a lien and privilege on the property described in favor of said plaintiffs.
Reference to plaintiff's petition discloses the fact that the attack upon the purported *Page 486 
sale was made on the ground that the same was a sham and a simulation conceived and confected by the defendants for the purpose of defeating the rights of plaintiff. Only in the alternative was the purported sale attacked as being a true sale made for the purpose of defrauding the plaintiff, the defendant, Larry Balthazar, allegedly being insolvent.
It is evident that the purported sale was set aside and annulled on the ground that it was simulated, which conclusion was abundantly justified by the evidence in this case. For this reason, the alternative attack and the relief coincident thereto must be disregarded.
For these reasons we find that the character of the judgment rendered in this case to the extent that it set the sale aside only with regard to the rights of plaintiff, and further recognized a lien and privilege in the interest of plaintiff, does not accord with the relief provided in actions of simulation. The character of relief granted by the judgment would be proper in revocatory actions in cases of fraudulent contracts under the authority of Article 1977 of the Civil Code. However, as we have stated, this was not the nature of the proceeding nor the character of relief primarily sought and recovered by plaintiff.
[7] It must also be borne in mind that at the time of the commencement of this action the plaintiff was not a creditor of the defendant, Larry Balthazar, and, therefore, did not have such a relationship as would have made the revocatory action, on the ground of fraud of creditors, available for her relief. Plaintiff became a creditor of this defendant only with the rendition of a money judgment in the same action which improperly restricted the setting aside of the purported sale and the granting of a lien and privilege to plaintiff.
For the reasons assigned the judgment appealed from is amended and recast to read as follows, to-wit:
"It is ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Minevia Rachal, and against the defendant, Larry Balthazar, in the full sum of Four Thousand ($4,000.00) Dollars, with five (5%) per annum interest thereon from the date of judicial demand until paid, and all costs of these proceedings.
It is further ordered, adjudged and decreed that the pretended sale of the following described property, to-wit:
All of Larry Balthazar's undivided right, title and interest in and to that certain tract of land on the right descending bank of Cane River in Natchitoches Parish, Louisiana, containing 52 acres, bounded in front by Cane River, in the rear by Conant, above by Guy Tolar and below by Conant.
One F20 Farmall Tractor, serial No. FA81978
One set of 210F tractor cultivators
One set of long beam middlebusters for tractor
One two row corn and cotton planter for tractor John Deere Model 536
One John Deere Tractor disc harrow
One 1 1/2 ton Chevrolet truck, Motor No. T5418242
One two wheel trailer
One white-face cow and calf
One red cow with white spots in her face,
made by Larry Balthazar, one of the defendants herein, to Bernie Balthazar, the other defendant herein, by act passed before Russell E. Gahagan, Notary Public for this Parish, on the 25th day of February, 1946, and registered in the conveyance office of the Parish of Natchitoches under original No. 85023, be set aside, voided and annulled."
It is further ordered, adjudged and decreed that all costs of both Courts are taxed against defendants.
KENNON, J., absent. *Page 487