364 So.2d 263 (1978)
Clarence LeBLANC, Plaintiff-Appellant,
v.
AMERICAN EMPLOYERS INSURANCE CO. et al., Defendants-Appellees.
No. 6627.
Court of Appeal of Louisiana, Third Circuit.
October 17, 1978.
Rehearings Denied November 28, 1978.
Writs Refused January 26, 1979.
*264 Cooper & Sonnier, Calvin E. Woodruff, Jr., Abbeville, for plaintiff-appellant.
J. Minos Simon, Lafayette, Sue Fontenot, Abbeville, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell by Timothy J. McNamara, Lafayette, for defendants-appellees.
Cynthia Picou, Francisville, for defendants-appellees-appellants.
Before CULPEPPER, WATSON, GUIDRY, FORET and CUTRER, JJ.
*265 GUIDRY, Judge.
This is a tort suit wherein plaintiff seeks to recover damages for injuries sustained by him in an accident which occurred April 6, 1974. The defendants in the tort action are Pierre Hebert; his wife, Aline Hebert; and, their insurer, American Employers Insurance Company (American). Coupled with the tort suit is an action by plaintiff against Pierre Hebert, Aline Hebert and their only daughter, Genella Hebert Norsworthy, to set aside an act of donation of real and personal property as having been made gratuitously and in fraud of creditors.
The record reflects that on the afternoon of Saturday April 6, 1974 plaintiff, Clarence LeBlanc, was operating his motorcycle in a westerly direction on West First street (Hwy. 14) in the city of Kaplan, Vermilion Parish, Louisiana. At the same time, defendant, Mrs. Pierre (Aline) Hebert, was driving a community automobile on a community mission in an easterly direction on the same street. West First street is a two lane, paved highway, traversing the city of Kaplan from east to west. Lejeune street, in the city of Kaplan, is a two laned, paved roadway, running north and south. Lejeune street forms a junction or "T" intersection with the northernmost lane of West First street.
Upon reaching the intersection of West First street and Lejeune street on the date in question, defendant, Mrs. Hebert, stopped on West First street intending to execute a left turn across the west bound lane of West First street onto Lejeune street. Mrs. Hebert did not see plaintiff approaching in a westerly direction, and as he entered the intersection, she simultaneously commenced a left turn maneuver colliding with plaintiff. As a result of the accident plaintiff received severe injuries. On April 22, 1974 and May 9, 1974, prior to the institution of this suit,[1] defendants, Pierre and Aline Hebert, donated substantially all of their property to their only daughter, Genella Hebert Norsworthy. The April 22, 1974 donation conveyed to Mrs. Norsworthy two time certificates of deposit issued by Vermilion Bank & Trust Company, one of $5,000.00 and one of $2,000.00. The May 9, 1974 donation to Mrs. Norsworthy purported to convey to the latter a 100 acre tract of land in Vermilion Parish, Louisiana, together with "all livestock, buildings, barns, and any equipment of any nature whatsoever situated and/or located on the above described premises, including the house and/or dwelling situated upon the above described property". It is this latter donation which plaintiff seeks to revoke as having been executed in fraud of his rights.
At trial on the merits it was stipulated that at the time of accident American had in effect a policy of automobile liability insurance issued to defendants, Pierre and Aline Hebert, bearing limits of $10,000.00 per person and $20,000.00 per accident for bodily injury and $10,000.00 for property damage. It was further stipulated that the property damage suffered by plaintiff was $1,000.00.
The matter was tried by a jury which returned a verdict on special interrogatories which resulted in a judgment which awarded plaintiff $50,000.00 in total, non-itemized, damages and denied his revocatory action. The judgment was rendered against defendant, American and Pierre and Aline Hebert, in solido, in the sum and amount of $11,000.00 and the remainder thereof, i. e., $39,000.00, being in favor of plaintiff and against Pierre and Aline Hebert, in solido. Following rendition of judgment plaintiff executed a partial release acknowledging satisfaction of the first $11,000.00 of the $50,000.00 judgment, reserving all rights to proceed against Pierre and Aline Hebert, individually, for the remaining $39,000.00 and further reserving all rights to have that sum increased on appeal.
From this judgment plaintiff appealed seeking a reversal of the trial court judgment insofar as it denied a revocation of the donation inter vivos and seeking also an increase in the quantum of damages awarded. Defendants Aline and Pierre Hebert, answered plaintiff's appeal seeking a reversal *266 of the trial court's finding on the issue of defendants' tort liability. Genella Hebert Norsworthy did not appeal nor answer the appeal of plaintiff.
The substantial issues on appeal are:
1. Did the jury err in finding Clarence LeBlanc free from negligence?
2. Did the jury err in dismissing plaintiff's revocatory action?

3. Is the jury's assessment of damages manifestly erroneous?
DID THE JURY ERR IN FINDING PLAINTIFF, CLARENCE LEBLANC FREE FROM NEGLIGENCE?
Defendants do not seriously contend that on the occasion in question Mrs. Aline Hebert was not negligent or that her negligent conduct in executing a left turn in the face of oncoming traffic, did not proximately cause the accident. Defendants do however, strongly urge that plaintiff was contributorily negligent and the jury erred in its finding to the contrary.
The question as to whether or not plaintiff was contributorily negligent is for the most part, a factual issue. It is well settled in our jurisprudence that the factual findings of the trial court should not be disturbed on appeal in the absence of manifest error. Canter v. Koehring Co., et al., 283 So.2d 716 (La.1973). We find no error in the jury's determination of this issue.
There is no evidence in the record which would reflect that plaintiff was exceeding the posted speed limit or that he was riding his motorcycle other than in a normal and prudent manner. Plaintiff was proceeding in his proper lane of traffic and had the right to assume that the defendant, Mrs. Hebert, would obey the law and allow him to continue. Further, the record supports the finding that at the point where plaintiff saw or should have seen Mrs. Hebert would not yield the right of way to him, plaintiff did not have the time or distance to stop or avoid the collision. Presumably the jury so found in rejecting defendants' contention that plaintiff was contributorily negligent and as aforesaid, we find no error in this conclusion.
Bailes v. Casualty Reciprocal Exchange, La.App., 279 So.2d 255 and Allstate Insurance Co. v. Toliver, La.App., 341 So.2d 1156.

DID THE JURY ERR IN DISMISSING PLAINTIFF'S REVOCATORY ACTION?
Appellant argues that the act dated May 9, 1974, purporting to transfer approximately 100 acres of immovable property along with all the improvements thereon from Pierre and Aline Hebert to Genella Hebert Norsworthy should be annulled by this court as having been executed in fraud of his rights. This act of donation was executed and recorded prior to the date on which suit was instituted but after the date of the automobile accident which gave rise thereto. It is appellant's position that as he had become a creditor of Pierre and Aline Hebert on the date of the accident, his rights as a creditor became vested on that date, rather than on the date suit was filed.
We find that the jurisprudence of this State supports appellant's position. The debt owed by a tortfeasor to the victim of the tort accrues at the time that the injury is sustained, and not on the date that suit is filed or judgment obtained. Holland v. Gross, 195 So. 828 (La.App. 2nd Cir. 1940); Perigoni v. McNiece, 307 So.2d 407 (La.App. 4th Cir. 1975). The filing of suit merely seeks recognition of a pre-existing delictual obligation. Therefore, we agree that on May 9, 1974, the date on which the appellees sought to transfer immovable property to their daughter, appellant was already a creditor of Pierre and Aline Hebert, with standing to attack such a transfer if proven to be made in fraud of his rights.
The civil code establishes a cause of action for the avoidance of contracts by persons who are not parties thereto by way of a revocatory action. LSA-C.C. 1968 et seq. LSA-C.C. 1969, in pertinent part, provides as follows:
*267 ". . . every act done by a debtor with the intent of depriving his creditor of the eventual right he has upon the property of such debtor, is illegal, and ought, as respects such creditor, to be avoided . . ."
LSA-C.C. Article 1970 provides:
"The law gives to every creditor, when there is no cession of goods, as well as to the representatives of all the creditors where there is any such cession, or other proceedings by which they are collectively represented, an action to annul any contract made in fraud of their rights."
When the contract sought to be avoided is purely gratuitous in nature, it is presumed to have been made in fraud of existing creditors if, at the time of its execution, the debtor did not have over and above the amount of his debts, more than twice the value of the property he sought to dispose of by such act. LSA-C.C. 1980.
The record before us indicates that the immovable property transferred, valued in the donation at the sum of $55,000.00, represented substantially all the property owned by Pierre and Aline Hebert.[2] Judgment in the amount of $50,000.00 was rendered against appellees by the trial court, which sum could not be satisfied from the property which remained in their ownership following the transfer in question. Therefore, if the transfer was purely gratuitous in nature these factors in combination necessarily give rise to a presumption of fraud which appellees bear the burden of refuting. LSA-C.C. Article 1980.
The terms of the act itself clearly purport to evidence a "manual gift and donation inter vivos" to Genella Hebert Norsworthy of the immovable property therein described, given in consideration of love and affection alone. Appellees urge, however, that contrary to its own terms, this document evidences what was actually a donation remunerative in nature. They allege that the donee helped her father work on the land after school as a child, and had rendered "services" for her parents when they were sick.
By the express terms of the instrument itself, the act executed by appellees was a self styled donation inter vivos given in consideration only of the donee's love and affection. The terms so indicating are clear and free of ambiguity. Appellees have neither enumerated those services allegedly performed by the donee, nor placed upon such services a value by which the court might correlate the value of the immovable with the value of the services allegedly rendered in exchange therefor. Apart from vague allusions to chores performed by the donee while a child, similar to those normally performed by children at the direction of their parents, we are unable to discern from the record any evidence to refute the express terms of the act itself. We find the act to be a pure gratuitous donation, the circumstances of which cast upon Pierre and Aline Hebert the burden of proving that such donation was not made in fraud of appellant's rights.
As aforestated this matter was tried to a jury which dismissed plaintiff's revocatory action. We do not know and have no means of knowing whether the jury found the donation in question to be a pure gratuity. If the jury did not so find and did not attach to it the presumption of fraud allowed by C.C. Article 1980 then such conclusion we find manifestly erroneous.
In seeking to refute the presumption that the transfer in question was made in fraud of plaintiff's rights appellees point to the testimony of donors to the effect that they clearly manifested an intent to donate this property to their daughter a year before the accident. This manifestation of intent is said to arise from the fact that sometime in the early part of the year 1973 Mr. Hebert called upon Mr. James Fontenot, an attorney in Abbeville, Louisiana, to discuss the feasibility and propriety of making such a donation. The Heberts testified that at *268 this one meeting, which occurred over one year prior to the accident, Mr. Fontenot was commissioned to prepare the donation but because of his procrastination and delay the document was not prepared and not executed until May 9, 1974. Our examination of the record prompts us to conclude that at the meeting between Messrs. Hebert and Fontenot in the year 1973 no specific agreement was reached that the latter would prepare a donation for execution by Mr. and Mrs. Hebert to their daughter, rather only the possibility of doing so was discussed. According to the testimony of James Fontenot, when Mr. Hebert called at his office he indicated that he was not in a hurry to have the document prepared, he did not inform him of the specific property which he wished to donate and made no specific agreement to have the document drawn up. The Heberts testified that during the year following their initial and only contact with Mr. Fontenot some effort was made to contact him in regard to the proposed donation, however, without success allegedly because Mr. Fontenot was occupied with legislative business. Although, the Heberts may have exerted some effort to contact Mr. Fontenot to further discuss the donation, the fact remains that he was not in fact again contacted until after the accident at which time the donation was prepared and executed.
Even if the record be viewed in a light most favorable to appellees and it be concluded that the Heberts made every effort to execute a donation to their daughter prior to the accident of April 6, 1974, but did not do so because of the fault of their attorney, this would not refute the presumption that at the time the donation was actually executed, i. e., after the accident, it was made in fraud of the rights of the plaintiff, their creditor. This is so because at the time of the making of the gratuitous donation they were left with insufficient property, at least, to satisfy plaintiff's demand. In our view the only evidence sufficient to rebut the presumption of fraud established by LSA-C.C. Article 1980 is evidence establishing that the donors had sufficient property remaining, following the donation, to satisfy plaintiff's demand. Chase v. McCay et al., 21 La.Ann. 195. Since the record in this case clearly reflects that following the donation of May 9, 1974, Pierre and Aline Hebert had not sufficient property remaining to satisfy plaintiff's demand it follows that appellees have failed to overcome the presumption that the donation was made in fraud of plaintiff's rights. Accordingly, we hold that the donation from Pierre and Aline Hebert to Genella Hebert Norsworthy dated May 9, 1974, recorded May 10, 1974 in Book 24, Folio 449, Entry No. 222671, records of Vermilion Parish, Louisiana is a fraudulent transaction, confected in fraud of plaintiff's rights as a judgment creditor of Pierre and Aline Hebert, and that such transfer should be annulled and set aside, insofar as Clarence LeBlanc is concerned, to the end that all property purported to be transferred thereby shall be subject to the payment of the money judgment in favor of plaintiff-appellant. LSA-C.C. Article 1977. We find the conclusion of the trial jury to the contrary to be manifestly erroneous.

QUANTUM
The only issue which remains is that which concerns the sufficiency of the quantum award. Dr. Alton Bujard, a radiologist, testified that he examined Clarence LeBlanc's x-rays on the date of the accident, April 6, 1974. On that date x-rays revealed a non-displaced fracture of the 6th left rib, multiple fractures of his lumbar spine involving the transverse process of L-2, L-3, L-4 with displacement of the fragments, and open comminuted fractures of the left lower leg involving the tibia-fibula directly above the ankle. LeBlanc was initially attended by Dr. Marion J. Trahan, a surgeon, who performed an open reduction with internal fixation of the left distal third of the tibia-fibula, inserting a pin for stabilization and gathering the boney fragments together by means of a Parham band. His examination revealed the fracture to be severely comminuted and unstable. After being put in a long leg cast, LeBlanc remained hospitalized from April *269 6, 1974 until May 9, 1974 for treatment of his rib, back and leg injuries.
Dr. Trahan referred LeBlanc to Dr. Lee Leonard, an orthopedic specialist, who first saw appellant on September 18, 1974. Under Dr. Leonard's direction, a myelogram of the cervical and lumbar spine was performed which revealed a ruptured disc at the L-3, L-4 level. Due to the apparent risks involved in having surgery performed to repair this condition, LeBlanc decided against having the surgery performed at this time. However, the record does indicate that future surgery may become necessary to remove the disc.[3]
By November, 1975, 19 months after the accident, the fracture of the tibia had not yet healed, and appellant had to be re-hospitalized, at which time a bone graft was performed and part of the small bone on the outside of his leg removed. For a period in excess of two years, appellant's leg remained immobilized alternately by means of a cast and a brace.
At the time of trial, some three years post accident, although the fracture was healed appellant was still suffering from poor circulation in his left leg (a condition known as "milk leg"); his lower leg still had generalized swelling; his ankle had lost approximately 30 percent motion; and, he continued to suffer the effects of the ruptured disc in his back.
The record reflects medical expenses incurred by appellant to have been in excess of $8,000.00. With the possibility of future back surgery requiring a six month medical follow-up, additional future expenses are likely to be incurred.
At the time of the accident appellant was self employed, and had been operating an upholstery business out of his home for approximately one and a half years. The record reflects that this business was bringing in a limited income at the time of the accident. Appellant's 1973 income tax return indicates a net profit of $2678.00, and his return covering the first four months of 1974 indicate he had a net income of approximately $400.00 for that period. Since the date of the accident, appellant has not been steadily employed, although the record does reflect that he has engaged in nonstrenuous part-time work such as a farm tractor driver, a police radio dispatcher, a rural route mailman and has done some limited upholstering work. The record indicates that appellant is presently capable of performing only light work as a result of the injuries he has sustained.
The record is not clear concerning the amount of earnings that have been and will be lost by appellant. However, there can be no doubt that he has sustained a substantial loss of earnings in the past and will continue to lose earnings in the future as a result of his injuries.
In determining the amount of its award, the jury presumably considered appellant's injuries, and the aforementioned factors relative thereto, as well as appellees' ability to respond in judgment. Evidence of appellees' limited insurance coverage as well as their limited income and property appears from the record to have been presented for the jury's consideration. We likewise assume that in fixing quantum, the jury was cognizant of the fact that it was going to dismiss the revocatory action, thereby vesting title to the donated immovable property in the donee, Genella Hebert Norsworthy.
In light of our conclusion that appellant's revocatory action should be sustained, which substantially increases appellees' ability to respond in judgment, we find that the rationale set forth by the Louisiana Supreme Court in Coco v. Winston Industries, 341 So.2d 332 (La.1977) and Schexnayder v. Carpenter, 346 So.2d 196 (La.1977) does not herein apply.
Although we find that appellees' ability to respond in judgment has been increased by the value of the property purported to be donated, we do, however, acknowledge that appellees' ability to satisfy a judgment is still quite limited.
*270 Under all circumstances we find that an award of $50,000.00 in total, non-itemized, damages is clearly inadequate. Appellant remained hospitalized and in a cast for an extended period. He endured a prolonged and painful healing process. As a result of his injuries, he was rendered incapable of engaging in steady employment for a three year period following the accident, and his ability to engage in future employment has likewise been substantially impaired. It is probable that appellant will incur future medical expenses as well.
For the aforementioned reasons, we believe that a total award of $70,000.00 to appellant will do substantial justice to all parties. Considering the partial release granted by appellant to American, we will amend that portion of the trial court's judgment rendered against Mr. and Mrs. Pierre Hebert, in solido, so as to increase the judgment against them from $39,000.00 to $59,000.00.
For the above and foregoing reasons we affirm the trial court's conclusion as to liability and its assessment of costs in the trial court; reverse the trial court judgment in the revocatory action; and, amend the trial court judgment so as to increase the quantum of the award in favor of plaintiff and against Pierre and Aline Hebert, in solido. To that end and considering the "PARTIAL SATISFACTION OF JUDGMENT AND PARTIAL RELEASE" executed by plaintiff in favor of defendants, Pierre Hebert, Aline Hebert and American Employers Insurance Company, dated February 23, 1978, we amend and recast the judgment below, in part, and order that there be judgment in favor of plaintiff, Clarence LeBlanc and against defendants, Pierre and Aline Hebert, in solido, (over and above the amount for which they are cast in solido with American Employers Insurance Company) in the sum and amount of FIFTY-NINE THOUSAND AND NO/100 ($59,000.00) DOLLARS with legal interest thereon from date of judicial demand until paid, subject, however, to a credit for any interest on such amount previously received by plaintiff as evidenced by the agreement of partial satisfaction of judgment dated February 23, 1978. It is further ordered, adjudged and decreed that there be judgment in favor of plaintiff, Clarence LeBlanc, and against defendants, Pierre Hebert, Aline Hebert and Genella Hebert Norsworthy decreeing and declaring that the donation from Pierre and Aline Hebert to Genella Hebert Norsworthy dated May 9, 1974, recorded May 10, 1974, in Book 24, Folio 449, entry number 222671, records of Vermilion Parish, Louisiana, is a fraudulent transaction, confected in fraud of plaintiff's rights as a judgment creditor, and such transaction is hereby annulled and set aside, insofar as Clarence LeBlanc is concerned, to the end that all property purported to be transferred thereby is hereby declared subject to the payment of the money judgment hereby rendered in favor of plaintiff, Clarence LeBlanc. It is further ordered that the assessment of costs in the trial court is affirmed. Finally, it is ordered that all costs of this appeal are to be borne by Pierre Hebert, Aline Hebert and Genella Hebert Norsworthy.
AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART; AND, RENDERED.
WATSON, J., concurs in part and dissents in part, and assigns written reasons.
WATSON, Judge, concurring in part and dissenting in part.
I agree with the jury and concur with the majority that Mrs. Aline Hebert was negligent and Clarence LeBlanc was not negligent.
I dissent from the majority's decision to reverse the jury's factual conclusion that the donation by Pierre and Aline Hebert was not fraudulent, allowing revocation of the donation by the Heberts to their daughter.
LSA-C.C. art. 1849 states:
"Some circumstances and acts attending particular contracts, are by law declared to be conclusive; and others, presumptive evidence of fraud. These laws will be found in the proper divisions of this Code, treating of these contracts." *271 The presumption of fraud established by LSA-C.C. art. 1980, is not a conclusive one and can be rebutted by evidence to the contrary. Planters of Pine Bluff, Inc. v. Gallion Gin, Inc., 228 So.2d 152 (La.App. 2 Cir. 1969); Hinde's Lessee v. Longworth, 24 U.S. 199, 11 Wheat. 199, 6 L.Ed. 454 (1826). The majority errs as a matter of law in stating that only a showing of sufficient property remaining to satisfy plaintiff's claim would rebut the presumption. See 9 Tulane Law Review 422.
LSA-C.C. art. 1980 was read to the jury as follows:
"If the contract be purely gratuitous, it shall be presumed to have been made in fraud of creditors, if, at the time of making it, the debtor had not over and above the amount of his debts, more than twice the amount of the property passed by such gratuitous contract."
The jury was properly instructed that a donation given without anything in return is gratuitous; further instructed that, once the presumption of fraud arises, it then becomes defendants' burden to prove that the donation was not made in fraud; and told that:
"Fraud may be inferred from facts and circumstances. However, if the acts and circumstances have an explanation that is natural and probable and is consistence (sic) with the good faith and honesty of the parties, they do not prove fraud, and the legal conclusion must be that it is not fraud." (TR. 413)
The jury here heard the testimony of Mr. and Mrs. Hebert, as well as that of attorney James Fontenot, and concluded that the Heberts had rebutted the presumption of fraud attached to their gratuitous donation. The majority erroneously concludes that this factual finding is not one on which reasonable minds may differ.
The uncontradicted testimony of James Fontenot was that Aline and Pierre Hebert consulted him in 1973, after having some difficulty in obtaining an appointment. According to his testimony, Mr. and Mrs. Hebert are illiterate and do not speak either English or French well. They were interested in avoiding later succession proceedings and expressed a positive intent to donate their property to their daughter.[1] They did not, at the time of this first conference, press to conclude the donation and were undoubtedly unaware of what was necessary to do so. Then Senator Fontenot testified that he delayed and procrastinated, a common occurrence among busy attorneys serving in the legislature. Mr. and Mrs. Hebert saw attorney Fontenot at least twice and attempted to locate him several additional times. Both were sick from time to time in the interim. Mrs. Aline Hebert was subsequently involved in the accident with Clarence LeBlanc on April 6, 1974, long after the Heberts had expressed an intention to donate their property to their only child. Although the donation took place subsequent to the accident, Mr. Hebert testified that he thought he had enough insurance to cover any liability and did not know he would be sued personally. Mr. Hebert's uncontradicted testimony was that plaintiff LeBlanc told him: "You have insurance, and I don't want a penny that comes out of your pocket." (TR. 314) While I share the majority's sympathy with the injured plaintiff, Mr. LeBlanc admitted that the Heberts had no way of knowing at the time the donation was made, prior to the institution of this suit, that they had any individual liability in the matter.
It is possible, and certainly consistent with general experience, that the accident reminded Mrs. Hebert and her husband of the impermanence of life and the possibility that they might die without having made provision for their daughter. Regardless, the question of fraud turns largely on the credibility of the Heberts. Mr. and Mrs. Hebert are inarticulate people. The jury had an opportunity to judge their honesty on the basis of their demeanor and gestures, as well as the words transcribed.
Mr. and Mrs. Hebert were not left destitute by the donation since they retained *272 $4000.00 in the bank, as well as their social security and retirement income. Their daughter had agreed that they could remain in the donated home for the rest of their lives, and they testified they could rely on her to care for them in the event of illness.
Although a presumption of fraud exists and the sequence of events gives rise to suspicion, the question of whether Mr. and Mrs. Hebert rebutted the presumption of fraud is one on which reasonable minds may differ. I dissent from the majority's substitution of its judgment for that of the jury.
I further dissent from the increase in the award to plaintiff from $50,000 to $70,000. The $50,000 awarded does not represent a clear abuse of discretion on the part of the jury. LSA-C.C. art. 1934.
I RESPECTFULLY DISSENT.
NOTES
[1] Suit was instituted on May 13, 1974.
[2] Following the donation there remained to Pierre and Aline Hebert only a truck, a car and $4,000.00.
[3] Although appellees urge that this disc injury was not in fact caused by the accident, we find that a preponderance of the medical evidence in the record reveals it to be a complication of the aforementioned injuries suffered as a direct result of the accident.
[1] Fontenot was quite familiar with the immovable property involved; the Heberts had lived there at Forked Island since his childhood. (TR. 378).