CARTER, Judge.
This is a suit for damages arising out of a motor vehicle collision.
On September 15, 1975, plaintiff, Sylvester Dartez, was injured when the car in which he was a passenger was rear-ended by an 18-wheel tractor-trailer. At the time of the accident, the tractor-trailer was owned by Adam Dixon, leased by Big Chief Truck Lines, Inc. (Big Chief-Louisiana), and driven by Sammie Sossaman.[1] On the date of the accident, Big Chief-Louisiana was owned by a holding company, Big Chief Truck Lines of Texas, Inc. (Big Chief-Texas), which was owned by Stewart C. Bushong. Dartez filed suit on September 15, 1976, for damages against Adam Dixon and Sammie Sossaman, service finally being effected in early 1980. Thereafter, on September 21, 1977, Bushong entered into a stock sales agreement, transferring all of the stock in Big Chief-Louisiana to Joseph LeJeune, Jr. and Andrew Vidrine. As a part of that agreement, Bushong personally guaranteed the obligations of Big Chief-Louisiana under Section 111(b) of the stock sales agreement. Dartez subsequently amended his petition to add Big Chief-Louisiana and its insurer, Early American Insurance Company, as party defendants. Big Chief-Louisiana thereafter filed a third-party demand against Big Chief-Texas and Stewart Bushong. Bushong then third-partied Sossaman. In subsequent amending petitions, Dartez named Bushong, Big Chief-Texas, as well as his own insurer, Safeway Insurance Company, as defendants. Bushong and Big Chief-Texas then filed a third-party demand for indemnity, contribution and reimbursement against Big Chief-Louisiana, Sossaman, and Dixon.
After trial on the merits, the trial court rendered judgment on the main demand in favor of Dartez and against Big Chief-Louisiana, Sammie Sossaman, and Early American Insurance Company, in solido. Dartez was awarded $14,052.48 for medicals, $533.50 for property damage, and $325,-000.00 for general damages, together with legal interest from the date of judicial demand until paid. Early American Insurance Company’s liability was limited to its policy limits plus legal interest. Judgment was also rendered as follows: (1) in favor of Adam Dixon, Big Chief-Texas, and Stewart C. Bushong, dismissing plaintiffs claims on the main demand against them;[2] (2) in favor of Big Chief-Louisiana and against Big Chief-Texas and Stewart C. Bushong, in solido, on the third-party demand for indemnity for all sums paid on the main demand, plus $3,000.00 in attorney’s fees.[3] All defendants cast in judgment on the main demand were assessed costs. From this judgment, Bushong, Big Chief-Texas, and Dartez appeal.
Big Chief-Texas and Stewart C. Bushong assert that the trial court erred in:
*765 1. Finding that Big Chief-Texas and Bushong owed indemnity to Big Chief-Louisiana.
2. Finding Sammie Sossaman to be an employee of Big Chief-Louisiana and acting within the course and scope of his employment at the time of the accident.
Dartez contends the trial court erred in:
1. Refusing to grant judgment in favor of plaintiff and against Big Chief-Texas.
2. Refusing to grant judgment in favor of plaintiff and against Stewart C. Bush-ong.
3. Awarding insufficient damages to Dartez and in considering the effect of income tax on his claim for lost wages and impairment of earning capacity.
BIG CHIEF-TEXAS AND BUSHONG’S ASSIGNMENT OF ERROR NO. 1
Big Chief-Texas and Bushong first contend that the trial court erred in finding that they owed indemnity to Big Chief-Louisiana. Big Chief-Texas and Bushong reason that the instant suit, filed more than a year prior to but served after the stock sales agreement, did not constitute a “liability incurred” prior to the date of the contract. As such, they assert that they are not responsible for indemnifying Big Chief-Louisiana. Big Chief-Texas and Bushong further reason that in strictly construing the indemnity obligation, the trial court erred in finding that Big Chief-Texas and Bushong owed indemnity to Big Chief-Louisiana.
It is well settled that a tortfeasor’s liability accrues at the time the injury is sustained, not when suit is filed or judgment obtained. Holland v. Gross, 195 So. 828 (La.App.2nd Cir.1940). See also LeBlanc American Emp. Ins. Co., 364 So.2d 263 (La.App.3rd Cir.1978), writs denied, 366 So.2d 911, 916, 917 (La.1979). Based thereon, we find that the injuries sustained on September 15, 1975, were a “liability incurred” by Big Chief-Louisiana prior to the date of the stock sales agreement. Having so found, we must next consider whether the stock sales agreement required indemnification to Big Chief-Louisiana by Big Chief-Texas and Bushong.
The stock sales agreement provides in pertinent part, as follows:
This Stock Sales Agreement by and between Joseph LeJeune, Jr. and Andrew Vidrine (hereinafter collectively referred to as ‘Purchaser’) and Big Chief Truck Lines of Texas, Inc., a Texas corporation (hereinafter referred to as the ‘Shareholder’),
⅝ ⅜ % * ⅜ ⅜
III. CONDITIONS
$ * * * * *
(b) Shareholder hereby agrees that as of the closing date it will be responsible for the payment of all liabilities incurred by the Company on or prior to the date hereof occasioned by any act whatsoever of Shareholder, or by the Company, its officers, agents, employees and representatives, occurring on or prior to the date hereof. If as a result of the failure of Shareholder to pay any such liability, judicial proceedings are initiated by any claimant or claimants thereof to enforce payment thereof, Purchaser shall immediately upon learning thereof notify Shareholder and Shareholder agrees that it will immediately undertake to defend such suit at its sole cost and expense, with no right of recourse against Purchaser or the Company therefor. In the event that Shareholder fails to immediately undertake such defense, Purchaser and/or the Company shall be compensated for all costs, expenses, attorneys’ fees, and other costs incurred thereby, and/or settlement thereof including reimbursements for payment for the amount of the claim liability by Purchaser or the Company.
Further, Stewart C. Bushong executed a Guarantee of Shareholder, which provided as follows:
I, Stewart C. Bushong, do hereby agree to guarantee the obligations of Big Chief Truck Lines of Texas, Inc. under Section 111(b) of that certain Stock Sales Agreement dated September 21, 1977 by *766 and between Joseph LeJeune, Jr. and Andrew Vidrine and Big Chief Truck Lines, Inc.
It is well settled that a contractual provision will not be construed to indemnify a person for his sole negligence unless the provision shows a clear and specific intent to do so. Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977); Soverign Ins. Co. v. Texas Pipeline Co., 470 So.2d 969 (La. App.1st Cir.1985), writ granted, 475 So.2d 1097 (La.1985).
In the matter sub judice, paragraph 111(b) of the stock sales agreement clearly and unequivocally provides that each party will be responsible for the payment of any and all liabilities incurred during their respective periods of ownership. Under the agreement, any liabilities incurred by Big Chief-Louisiana prior to September 21, 1977, are the responsibility of Big Chief-Texas, and any liabilities incurred by Big Chief-Louisiana subsequent to September 21, 1977, are the responsibility of LeJeune and Vidrine. Nothing therein contemplates LeJeune and Vidrine assuming the responsibility for “liabilities incurred” by Big Chief-Louisiana, its employees, officers, agents, or representatives prior to September 21,1977. The accident which gives rise to the injuries sustained herein occurred on September 15, 1975. This is clearly prior to the execution of the stock sales agreement. In strictly construing the stock sales agreement and Guarantee of Shareholder agreement, we find that Big Chief-Texas and Stewart C. Bushong are responsible for the payment of the liabilities occasioned as a result of this suit.
BIG CHIEF-TEXAS AND BUSHONG’S ASSIGNMENT OF ERROR NO. 2
Big Chief-Texas and Bushong next contend that Sossaman was an employee of Dixon and not of Big Chief-Louisiana. They reason that, as such, they are not responsible for his actions.
It is settled that the trial court’s findings are entitled to great weight and that absent an abuse of the court’s discretion, its findings will not be disturbed on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Moreover, in determining whether an employee-employer relationship exists, an important element is the amount of control or supervision over the individual. Savoie v. Fireman’s Fund Ins. Co., 347 So.2d 188 (La.1977). Factors to be considered in assessing the right of control are the selection and engagement of the worker, the payment of wages and the power of control and dismissal. Dauzat v. Crites, 237 So.2d 697 (La.App. 4th Cir.1970). See also Cupit v. Grant, 425 So.2d 847 (La.App.3rd Cir.1982). Furthermore, an employee who employs another on his master’s behalf without his master’s expressed or implied authority does not create a relationship of employer-employee between his helper and his employer. Gentry v. Peterson, 19 So.2d 623 (La.App.2nd Cir.1944). A fortiori, where an employee employs another on his master’s behalf with his master’s authority, a relationship of employer-employee between his helper and his employer is created.
In the instant case, the record reflects that Big Chief-Louisiana leased five tractor-trailers from Dixon as well as employed him as a dispatcher for Big Chief-Louisiana. In his capacity as dispatcher, Dixon sent all Big Chief-Louisiana drivers, including the drivers of trucks not owned by Dixon, to pick up and deliver fuel and oil.
Moreover, Dixon was authorized by Big Chief-Louisiana to hire and direct the drivers. The record shows that Dixon directed the daily route of Sossaman and did so on the day of the accident, in particular.
Based upon these facts, we cannot say that the trial court was clearly wrong in finding that Sossaman was an employee of Big Chief-Louisiana, that Big Chief-Louisiana had the right of control and supervision over Sossaman, and that Big Chief-Louisiana was, therefore, liable to Dartez. Accordingly, this assignment of error is without merit.
*767 DARTEZ’S ASSIGNMENTS OF ERROR NOS. 1 and 2
In these assignments of error, Dar-tez contends that the trial judge erred in refusing to grant judgment in his favor and against Big Chief-Texas and Bushong. Specifically, he contends that in paragraph 111(b) of the stock sales agreement, Big Chief-Texas assumed the liabilities of Big Chief-Louisiana and became the primary obligor on those obligations. Alternatively, Dartez contends that the stock sales agreement constitutes a stipulation pour autrui in favor of Dartez.[4]
As stated previously, the trial court’s findings of fact are entitled to great weight and will be overruled only where there has been an abuse of the discretion afforded the fact finder. Arceneaux, supra. Moreover, only persons who are a party to contract can assert rights under it or obtain any benefits from it. See State ex rel. Guste v. Simoni, Heck & Associates, 331 So.2d 478 (La.1976).
Clearly, Dartez was not a party to the stock sales agreement. As such, he can derive no benefit or assert any right under it. Nevertheless, Dartez alternatively asserts his right as a third-party beneficiary.
LSA-C.C. art. 1890 provides:[5]
A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; if such third person consents to avail himself of the advantage stipulated in his favor, the contract cannot be revoked.
Under this article, when a commutative (bilateral) contract contains a stipulation pour autrui, the third person has a right of action against the promisor. However, the promisee or stipulator must have intended to confer a benefit upon the third person by the promisor fulfilling his part of the contract. Wagner & Truax Co. v. Barnett Enterprises, 447 So.2d 1255 (La.App.4th Cir.1984). Moreover, a stipulation pour au-trui must be in writing and must clearly reveal the contracting partiesintent to stipulate some advantage for the benefit of the third person. Fontenot v. Marquette Casualty Co., 258 La. 671, 247 So.2d 572 (1971); Teachers’ Ret. System v. La. State Emp. Ret., 444 So.2d 193 (La.App. 1st Cir.1983), reversed on other grounds, 456 So.2d 594 (La.1984). The benefit in favor of the third party may not be merely incidental to the agreement in question. HMC Management v. New Orleans Basketball Club, 375 So.2d 700 (La.App. 4th Cir.1979), writs denied, 378 So.2d 1384 and 379 So.2d 11 (La.1980).
In the case sub judice, the record is devoid of any intent to confer a benefit upon Dartez by either LeJeune, Yidrine or Big Chief-Texas. As such, this assignment of error is without merit.
DARTEZ’S ASSIGNMENT OF ERROR NO. 3
Dartez contends that the trial court committed manifest error in awarding insufficient damages. He reasons that the award is insufficient because the trial judge considered after-tax income in assessing the general damage award.
The trier of fact is afforded broad discretion in making an award of general damages. LSA-C.C. art. 1934(3). Only when the record reveals a clear abuse of this discretion is an appellate court justified in *768 disturbing a trial court award. Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Reck v. Stevens, 373 So.2d 498 (La.1979).
*767 Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary’s agreement.
*768 A review of the award made herein is complicated by the fact that it was an in globo award except for the awards for past medical expenses and property damage. As a result, there is no way of knowing the amount awarded by the trial court judge for each element of damage. Accordingly, in reviewing the award made, we must remain cognizant of the various items which may support the total award. Mullin v. Vessier, 400 So.2d 1192 (La.App. 1st Cir.1981).
Dartez specifically asserts that the award is inadequate with respect to lost wages. The record reflects that Dartez’s expert showed wage losses substantially greater than the total amount awarded by the trial judge for all damages, i.e., $580,-000.00 as contrasted to $325,000.00.
Dr. Jan Duggar, Dartez’s expert, based his calculations on a work life expectancy of 27.6 years, a 36.5 hour work week, and a gross annual income of $12,000.00. He noted that when Dartez was injured in 1975, his hourly wage was $6.31 and that on the date of trial his wages would have been $11.77. From these figures, Dr. Dug-gar calculated that Dartez’s lost wages to date were $129,734.00 and that his lost fringe benefits to date were $16,867.00, bringing his total lost wages to date to $146,601.00.
Dr. Duggar also calculated Dartez’s future lost wages at $395,773.00, using a 6% wage increase figure, an 8% discount figure, and considering that plaintiff was totally disabled. In using a 10% discount figure, Dr. Duggar estimated that Dartez’s future lost wages would total $580,000.00. If he were capable of working 40 hours per week for minimum wage, Dr. Duggar estimated that Dartez’s future lost wages would be $272,323.00.
Dr. Kenneth Boudreaux, defendant’s expert, testified that on the date of the accident, Dartez had a work life expectancy of 27.58 years. As 8.64 years had elapsed since the date of the accident, he calculated that on the date of trial, Dartez had a remaining work life expectancy of 18.94 years. In addition, Dr. Boudreaux used figures similar to those of Dr. Duggar in calculating pre-tax past lost wages. Based thereon, he determined that Dartez had lost past wages of $103,711.21 or after-tax past lost wages of $79,298.37.
In calculating Dartez’s future lost wages, Dr. Boudreaux used a 12% discount rate and a 6.5% wage increase rate. He established that, if Dartez was unable to work, his pre-tax future lost wages would be $218,996.32 and that his after-tax wage lost would be $189,151.65. Calculating same where Dartez did obtain employment for minimum wage, he calculated Dartez’s pre-tax lost wages at $134,113.74 and his after-tax income at $112,826.38.
There is no disagreement between Dar-tez's and defendants’ medical experts as to the extent of Dartez’s injuries.. He sustained a ruptured disc at the L4-5 level, has undergone major surgery twice, has been hospitalized three times, and has been treated by two different physicians. A physical examination shortly before trial revealed that the bone graft at the L4-5 level had become fragmented and refusion of the spine might be necessary. As a result of the accident, Dartez is regularly in severe and constant pain, unable to participate in normal recreational activities previously enjoyed, and is disabled with respect to performing heavy manual labor.
On the other hand, the testimony of the rehabilitation experts was not in agreement. Ms. Stephanie Chalfin, Dartez’s rehabilitation specialist, was of the opinion that job opportunities for Dartez were doubtful. Contrarily, defendant’s vocational rehabilitation expert, Dr. Neil Gorman, did not feel that Dartez’s outlook for employment was hopeless. He stated that with retraining, Dartez could obtain employment earning at least minimum wage, despite his physical limitations.
A review of the testimony and the evidence convinces us that the trial judge did not abuse his much discretion in awarding *769 plaintiff the sum of $325,000.00 for damages. Consequently, we affirm his judgment. Copeland v. La. Dept. of Transp. & Develop., 428 So.2d 1251 (La.App. 3rd Cir.1983), writ denied, 435 So.2d 448 (La.1983).
CONCLUSION
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be assessed equally against appellants.
AFFIRMED.

. The car in which Dartez was a passenger was owned by him and was being driven by Joseph R. Clues.

. No appeal was taken as to the trial judge's dismissal of Adam Dixon. Therefore, this issue is not before us on appeal, and his dismissal on the main demand is now final.

.We note that no judgment was rendered on the third-party demand of Bushong and Big Chief-Texas.

. Dartez also argues that under the lease agreement with Dixon, Big Chief-Texas agreed to be responsible to the public for the operation of the vehicles. However, the lease agreement was between Dixon and Big Chief-Louisiana. Therefore, under the lease, Big Chief-Louisiana, and not Big Chief-Texas, had the responsibility to the public for the leased vehicles.

. By Acts 1984, No. 331, § 1, effective January 1, 1985, the substance of LSA-C.C. art. 1890 was reproduced in LSA-C.C. art. 1978, which provides as follows:
A contracting party may stipulate a benefit for a third person called a third party beneficiary.