581 So.2d 1031 (1991)
Jerry J. THOMASSIE, Jr.
v.
Jerry A. SAVOIE and Joyce Savoie Savoie.
No. 90 CA 0248.
Court of Appeal of Louisiana, First Circuit.
May 16, 1991.
Rehearing Denied July 31, 1991.
*1032 Leslie J. Clement, Jr., Thibodaux, for plaintiff-appellant Jerry J. Thomassie, Jr.
Kerry P. Cuccia, New Orleans, for defendant-appellee Jerry A. Savoie, et al.
Before EDWARDS, WATKINS and LeBLANC, JJ.
WATKINS, Judge.
The plaintiff, Jerry J. Thomassie, Jr., appeals a judgment of the trial court which rejected a claim to annul a donation of immovable property from Jerry A. Savoie to Joyce Savoie Savoie. Finding that the trial court committed an error of law by applying retroactively a 1985 amendment to the codal provisions for the revocatory action, we reverse. Furthermore, concluding that Mr. Thomassie proved that the donation was subject to revocation, we render judgment in his favor.

FACTS
The judgment of the trial court which the plaintiff appeals was preceded by the following unfortunate chain of events.
January 28, 1982: Jerry J. Thomassie, Jr. was shot in the face by Jerry A. Savoie following a disturbance at a bar in Lafourche Parish, Louisiana. Mr. Thomassie received permanent and disfiguring injuries. Mr. Savoie was arrested and charged with the shooting.
May 12, 1982: Jerry A. Savoie made a "Remunerative and Onerous Donation Inter Vivos" to Joyce Savoie Savoie, from whom he was legally separated but not divorced. The act of donation erroneously *1033 stated that the two were divorced. The donation purportedly conveyed to Mrs. Savoie an undivided one-half interest in two tracts[1] of land owned by the community. The donation was recorded.
July 1, 1982: Mr. and Mrs. Savoie executed an "Act of Correction" amending the act of donation. The statement regarding the couple's status as divorced was changed to state that they were legally separated. An addition was made stating that "in addition to the consideration originally recited, the parties agree that the conveyance of the property in the original Act herein shall also constitute between the parties a full and final settlement of any and all property which they may have jointly owned at the time of their marriage and shall constitute a full and final compromise, acquitance and discharge for any further accounting between either of them to each other or to anyone else."
July 30, 1982: Mr. Thomassie's tort suit was filed.
December, 1982: Jerry A. Savoie began serving a lengthy prison term for the shooting of Jerry J. Thomassie, Jr.
January 1, 1985: A new codal provision went into effect, changing the prescriptive period for a revocatory action and adding a peremptive period.
February 8, 1988: Judgment was signed in favor of Mr. Thomassie and against Mr. Savoie in a civil damage suit for an amount in excess of $500,000.
June 10, 1988: The present suit was filed seeking to annul the donation by Mr. Savoie to Mrs. Savoie.
Following trial on the merits, the trial court held: first, that the donation was not a simulated transfer subject to annulment; second, that the revocatory action had prescribed because it was not filed timely in accordance with LSA-C.C. art. 2041 as amended in 1984; and third, that the condition imposed by Mr. Savoie was not a prohibited substitution so as to nullify that portion of the donation.
Because we disagree with the retroactive application of the prescriptive period of LSA-C.C. art. 2041 and find that the donation is subject to revocation, we need not discuss the other errors assigned by the plaintiff.

RETROACTIVE APPLICATION OF STATUTE
Prior to January 1, 1985, fraud was the underlying cause which allowed acts affecting property to be revoked. The law gave to the creditor an action to annul any contract made in fraud of his rights. Former LSA-C.C. art. 1970.[2] Every act which the debtor performed with the intent of depriving his creditor of the eventual right the creditor had upon the property of the debtor was illegal and could be set aside. Former LSA-C.C. art. 1969.[3] The legislature adopted a procedural scheme for the exercise of the eventual right, which scheme allowed the creditor the option of waiting until his claim against the debtor was liquidated. Prescription did not begin to run until the creditor obtained a judgment against the debtor on the underlying action; counting from the judgment date, the creditor had one year to bring the revocatory action. Former LSA-C.C. art. 1994.[4]
*1034 In 1984, with amendments to become effective January 1, 1985, the legislature enacted a broad change to the law on revocatory actions. The 1985 law abandoned the notion of fraud. It substituted as the cause for revocation any act of the debtor which causes or increases his insolvency. LSA-C.C. art. 2036.[5] Even the term "debtor" was changed to "obligee" to correspond with the thrust of the revision, which was to cover unliquidated claims. See LSA-C.C. art. 2041, Comments (b). Thus, with respect to prescription, the date of judgment of the underlying action became irrelevant. LSA-C.C. art. 2041, Comments (b). Instead, the new prescriptive period is one year, counted from the time the obligee has actual or constructive knowledge of the act of the obligor. Additionally, the legislature enacted a three year peremptive period for the action. LSA-C.C. art. 2041.[6]
In determining whether to apply article 2041 retroactively, we must decide whether the statute is substantive or whether it is procedural or remedial. When a statute is substantive in nature, it is not subject to retroactive application. LSA-C.C. art. 6 (formerly art. 8). Landry v. Board of Levee Commissioners, 477 So.2d 672 (La. 1985); Young v. American Hoechst Corp., 527 So.2d 1102 (La.App. 1st Cir.1988). Substantive acts are generally defined as those which create, confer, define or destroy rights, liabilities, causes of action or legal duties.
However, when a statute is merely procedural or remedial, it can be applied retroactively. Procedural acts describe methods of enforcing, processing, administering, or determining rights, liabilities or status. Hawn Tool Co. v. Crystal Oil Co., 514 So.2d 636 (La.App. 2d Cir.1987).
Statutes of limitation are remedial in nature and as such are generally accorded retroactive application. State v. Alden Mills, 202 La. 416, 12 So.2d 204 (1943). But if a statute which is remedial or procedural also has the effect of making a change in the substantive law, it must be construed to operate prospectively only. Manuel v. Carolina Casualty Ins. Co., 136 So.2d 275 (La.App. 3d Cir.1961).
In Young v. American Hoechst Corp., supra, we rejected the contention that LSA-C.C. art. 2315.3 was merely remedial; we held that the article created an obligation by expressly declaring the existence of a liability for the wrongful handling of hazardous materials where there was none before. See also Rodriguez v. Brown & Root, Inc., 410 So.2d 325 (La.App. 4th Cir. 1982).
Following the rationale in Young, we find that the revision of the law on the revocatory action created a liability where none existed before: a liability for any act of the obligor, fraudulent or non-fraudulent, that caused or increased the obligor's insolvency. We acknowledge that Article 2041 may be labeled "procedural" because its wording provides for prescription and peremption. But Article 2041 is part of the overall revision of the law; it is inextricably intertwined with Article 2036, which created a new obligation and which is substantive.
Since we cannot apply the substantive provisions of Article 2036 retroactively, we do not believe it would be consistent to apply Article 2041 retroactively. The prescriptive period of former Article 1994 was specifically designed to complement the substantive provisions of former Article 1907 and former Article 1969, which substantive provisions we are required to apply in this case. Mr. Thomassie's action, which was brought within one year of the judgment in his favor and against Mr. Savoie, would not be prescribed under former Article 1994. We hold therefore, that Mr. *1035 Thomassie's action for revocation was filed timely.[7]

REVOCATORY ACTION
Having decided that the plaintiff's revocatory action was not prescribed when he instituted the instant suit, we must determine what prerequisites the plaintiff was bound to satisfy to succeed in the action. The prerequisites are: first, insolvency of the debtor; second, injury to the creditor; third, intent to defraud the creditors; and fourth, pre-existing and accrued indebtedness. National Bank of Bossier City v. Hardcastle, 204 So.2d 142 (La.App. 2d Cir.1967, citing 9 Tul.L.Rev. 422 (1934-1935).

Insolvency of the debtor.
At the trial level defendants argued that plaintiff failed to prove that Mr. Savoie was insolvent because plaintiff introduced no evidence of the value of the donated property. This argument might have some merit in a different context. However, references to Mr. Savoie's dire financial circumstances occurred throughout the testimony of Ramona Savoie Galliano, the daughter of Jerry and Joyce Savoie, and of Mrs. Savoie herself. Mrs. Galliano testified that she was concerned that her father would lose the Hired Hand Saloon as he had lost other property. She approached her mother with the proposition that the mother "take over completely" the property and business in order to conserve it and prevent it from being seized by a creditor "like he lost everything else." Likewise, Mrs. Savoie testified about several pieces of community property which Mr. Savoie had "lost" to creditors. Reasonable inferences which can be drawn from their testimony support a conclusion that Mr. Savoie made himself insolvent when he donated the property.
Additionally, at the commencement of the trial defendants stipulated that the value of the assets of Mr. Savoie, at the time of the donation and at the date of trial, was less than $500,000. Since the debt to Mr. Thomassie exceeds $500,000, Mr. Savoie was and is insolvent.
Accordingly, the record supports the conclusion that the prerequisite of insolvency has been proved.

Injury to the creditor.
When he brought his revocatory action, Mr. Thomassie was a judgment creditor of Mr. Savoie for an amount in excess of a half million dollars. Any diminution of the judgment debtor's property which could have been used to satisfy the debt was an injury to the creditor. The fact that Mr. Thomassie did not have a judgment against Mr. Savoie at the time of the donation does not bar a finding that he was a creditor injured by the donation. At the time of the donation, Mr. Thomassie was an "eventual creditor," one whose debt is to be subsequently liquidated; he was not a conditional creditor without standing to bring the revocatory action.[8]
The second element of the revocatory action is present.

Intent to defraud the creditors.
Intent to defraud, like any other fact, can be inferred from the circumstances. Although Mr. Savoie denied any concern over Mr. Thomassie's civil suit, the timing of the donation to Mrs. Savoie was suspicious. There is no explanation for why, approximately five years after the first partial community property settlement, the couple decided it was time to reach a final settlement. Yet Mr. and Mrs. Savoie and their daughter were all cognizant of the legal problems, both civil and criminal, which Mr. Savoie faced. Additionally, Mr. Savoie admitted on the witness stand that if he had not gone to prison, he would have left the area; he wanted *1036 his wife to have the property when he was gone.
The fact that neither defendant admitted a design to deprive this specific creditor, Mr. Thomassie, of the property is immaterial. Both the donor and the donee had the intent to transfer the property out of the reach of creditors in general.
The facts of the instant case show an intent on the part of Mr. Savoie to defraud his creditors by donating his property to Mrs. Savoie.

Pre-existing and accrued indebtedness.
It is well established by our jurisprudence that the debt owed by a tortfeasor to the victim of the tort accrues at the time that the injury is sustained, and not on the date that suit is filed or judgment obtained. LeBlanc v. American Employers Ins., 364 So.2d 263 (La.App. 3d Cir.1978), writ denied, 366 So.2d 916 and 917 (La.1979). The filing of suit merely seeks recognition of a pre-existing delictual obligation, and as we mentioned previously, the victim is a creditor whose debt is to be subsequently liquidated.
Suffice it to say that the debt "accrued" to Mr. Thomassie at the time of the shooting, thus satisfying the fourth and final pre-requisite for a revocatory action.
Having satisfied the four prerequisites for a revocatory action, Mr. Thomassie is entitled to judgment in his favor. Accordingly, we reverse the judgment of the trial court dismissing the action of Mr. Thomassie. We hold that the donation from Jerry A. Savoie to Joyce Savoie Savoie dated May 12, 1982, is a fraudulent transaction, confected in fraud of the rights of the judgment creditor, Jerry A. Thomassie. Such transfer is annulled and set aside, insofar as Jerry J. Thomassie is concerned; the interest in the property described in the Act of Donation recorded in the records of Lafourche Parish in Conveyance Book # 774, Entry Number 562328, which interest was owned by Jerry A. Savoie and purportedly transferred, is subject to the payment of the money judgment in favor of plaintiff-appellant.[9] Appellees are cast for costs of this appeal.
REVERSED AND RENDERED.
EDWARDS, J., concurs in the result.
NOTES
[1] Tract 1 was the property behind Mrs. Savoie's home extending to the 40-arpent line. The parties to the instant suit stipulated that the suit did not seek to annul the transfer of the home and the land on which the home was situated, which transfer was made in a "Partial Settlement of Community" dated September 30, 1977.

Tract 2 was the property on which the business, the "Hired Hand Saloon," was located.
[2] Former LSA-C.C. art. 1970 reads in part as follows:

Art. 1970. The law gives to every creditor ... an action to annul any contract made in fraud of their rights.
[3] Former LSA-C.C. art. 1969 reads in part as follows:

Art. 1969. [E]very act done by a debtor with the intent of depriving his creditor of the eventual right he has upon the property of such debtor, is illegal, and ought, as respects such creditor, to be avoided.
[4] Former LSA-C.C. art. 1994 in pertinent part reads as follows:

Art. 1994. The action ... is limited to one year; if brought by a creditor individually, to be counted from the time he has obtained judgment [on the underlying action] against the debtor; ...
[5] LSA-C.C. art. 2036 reads in part as follows:

Art. 2036. An obligee has a right to annul an act of the obligor ... made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency.
[6] LSA-C.C. art. 2041 reads as follows:

Art. 2041. The action of the obligee must be brought within one year from the time he learned or should have learned of the act ... of the obligor that the obligee seeks to annul, but never after three years from the date of that act or result.
[7] Knowledge of the donation is irrelevant under these facts. Mr. Thomassie is charged with knowledge as of the date of recordation because this was a donation of immovables. Thus, the peremptive period is also irrelevant.
[8] "One not yet definitely a creditor cannot destroy the rights of a third party (transferee) and the fact that fraud has been practiced by the debtor cannot give the conditional creditor a right as long as his status is uncertain." "The Revocatory Action", 9 Tul.L.Rev. 422, 426 (1934-1935).
[9] For an explanation of the character of the judgment in a revocatory action as contrasted with an action to annul a simulation, see Rachal v. Balthazar, 32 So.2d 483 (La.App.2d Cir. 1947).