SUSAN M. CHEHARDY, Judge.
| gPlaintiff/appellant, Amy Strong Muller (“Mrs. Muller”), appeals a judgment of the district court denying her petition to have a premarital matrimonial agreement declared null and void ab initio. Mrs. Muller alleged in her petition that she and her then fiance’, Carl Muller Jr. (“Mr. Muller”), entered into the agreement on April 7, 1995 in St. John the Baptist Parish, and the agreement was duly recorded on that same day. The couple was married on the following day, April 8, 1995. The record indicates that the marriage broke down at some point, although their marital status at the time of the hearing indicates the couple was not yet divorced.
Mrs. Muller’s original petition indicated that the agreement was “executed before a notary”, but was not in authentic form or duly acknowledged by the parties, in accordance with La. C.C.-art. 2331. Specifically, she urged that although the agreement bore the signature of a notary, there were no witnesses to Rthe party’s signatures, and as a result the agreement should be set aside for lack of proper form. Mrs. Muller filed a Motion for Summary Judgment, which was converted to an ordinary proceeding, and the matter went to trial on the merits on November 19, 2009. Following the trial that took place in November 2009, the trial court orally granted judgment in favor of Mrs. Muller, but the judgment was not reduced to writing.
Although the date is unclear from the record, at some point before the judgment was reduced to writing the trial court de *366 cided to reconsider its earlier ruling, granted a new trial on its own motion, and reheard the matter on January 13, 2010.[1] Following that hearing, the trial court, in a judgment dated April 6, 2010, denied Mrs. Muller’s petition finding the agreement to be valid. Mrs. Muller appeals.
At the hearing in January 2010 that forms the basis of this appeal, Mr. Muller testified that he could not recall who presented whom with the actual premarital matrimonial agreement, that he did not recall if he or Mrs. Muller prepared it, whether he obtained the form from an attorney, or if he downloaded it from a computer. He remembered taking the document to a notary, but admitted that there were no witnesses present when he executed the document. He denied Mrs. Muller’s allegation that the agreement was signed by her at home prior to the time he brought it to the notary. He did not remember who had the agreement recorded. Mr. Muller could not recall whether or not he worked for several years following the marriage, although he did “cash jobs” sometimes “as long as I stayed under the federal limit.” He did not recall if he had gone back to work in 1997, or exactly where he worked from 1997 till the parties moved their matrimonial domicile to Mississippi in 1999.
|4Mrs. Muller testified that the primary reason for the premarital matrimonial agreement was Mr. Muller’s concern that her income would be used to calculate an increase in child support for Mr. Muller’s child from a previous marriage. Mrs. Muller testified that Mr. Muller downloaded the form from the computer in their home, and presented it to her for her signature the day before their planned nuptials. She testified that she believed he would not marry her if she did not sign it. She testified that there was no one present at their home when she signed the document and, after she executed the agreement, Mr. Muller took the document to a notary with whom he was familiar, who notarized it. However, no witnesses signed the agreement. She did not testify as to how the document came to be recorded. Mrs. Muller testified that, once they were married, Mr. Muller never mentioned the premarital matrimonial agreement again.
According to the testimony of both parties, while they did observe certain formalities of a separate property regime, such as separate bank accounts and separate tax returns, they both testified that they acquired several pieces of real estate during the marriage, and that none of the acts of sale referenced or mentioned the premarital matrimonial agreement. Mrs. Muller also testified that she utilized a substantial portion of her income, and a separate property inheritance from her uncle, to pay expenses on renovation and upkeep of their joint properties, and to pay loans and other obligations that directly benefited Mr. Muller.
Following the second trial in this matter, the trial court entered judgment with written reasons dated April 6, 2010. While the trial court determined that the agreement had not been signed before a notary or two witnesses, and, as such, the premarital agreement was invalid as an authentic act, the trial court found that the agreement was valid as an act under private signature, duly acknowledged. The court reasoned that, the act was duly acknowledged because, in open court, Mrs. [sMuller twice admitted the signature as her own before numerous witnesses. The trial court went on to state that Ritz v. Ritz,[2] a case from this Court,
*367 arbitrarily assumes that because all elements of an authentic act must be met before the marriage, then the same must be applied to all elements of an act under private signature duly acknowledged .... Pertinent statutory law is devoid of any reference to such requirement. ... The 5th Circuit in Ritz combined two ideas that should not be combined and created a requirement that simply does not exist. (Emphasis in original).
The trial court further held, “The agreement benefitted both parties and was executed prior to the marriage. Therefore, the policy concern that necessitates court approval for agreements made during the marriage does not apply in this case.”
La. C.C. art. 2331 states, “A matrimonial agreement may be executed by the spouses before or during marriage. It shall be made by authentic act or by an act under private signature duly acknowledged by the spouses.” La. C.C. art. 2329 states, in pertinent part,
Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests, and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval. (Emphasis added.)
In the case before us, the trial court incorrectly concludes, as a matter of law, that La. C.C. art. 2329 is inapplicable to this matter. The dictates of La. C.C. art. 2329 are not mere policy concerns, but a mandate made part of a statutory enactment that casts a suspicious eye on the establishment of a separation of property regime effected during the marriage. The codal requirement that any party entering into an agreement that modifies or terminates the matrimonial regime after marriage must do so by joint petition and a finding by a court that the | ¡¡modification is in the best interest of both parties, is without exception. The factual circumstances of this or any other case cannot act to vitiate its requirements. See Lauga v. Lauga, 537 So.2d 758 (La.App. 4th Cir.1989).
In Ritz v. Ritz, supra, this Court was faced with a factual situation similar to the matter now before us. Mr. and Mrs. Ritz entered into a premarital matrimonial contract that evidence showed failed as an authentic act. In considering whether or not the document sufficed as an act under private signature, we stated in Ritz:
Mr. Ritz avers that because Mrs. Ritz admitted in court, as well as in her deposition, that she signed the document, the contract has been duly acknowledged and thus qualifies as an act under private signature. However, there is nothing in the record to indicate that any acknowledgment took place prior to or even during the marriage. We note that La. C.C. art. 2331, supra, has made acknowledgment a requisite to the validity of a matrimonial contract under private signature. Except for the exception stated in [La. C.C.] art. 2329, supra, just as all requirements of a premarital authentic act must be met prior to the marriage, so too, must all elements of an act under private signature duly acknowledged be done prior, or antecedent, to the marriage.
Ritz, supra at 1185 (Emphasis in original).
We find that the trial court’s abrogation of the Ritz case was in error. The case before us presents no single fact that deviates from Ritz, and its premise remains sound. Both Mr. and Mrs. Muller testified that the document in question was executed prior to their marriage. Yet, even the *368 trial court found that Mrs. Muller’s signature was not properly witnessed by the notary and, as such, the document is not in authentic form. Further, the record does not indicate that Mr. or Mrs. Muller duly acknowledged the matrimonial agreement before the marriage.
The issue is whether a party can duly acknowledge a signature on a premarital matrimonial agreement after the marriage. Here, Mrs. Muller did admit that her signature was on the premarital matrimonial document. However, as in Ritz, we note that “all elements of an act under private signature duly 17acknowledged be done prior, or antecedent, to the marriage.” Id. We hold that a post-nuptial acknowledgement cannot vitiate the mandate of La. C.C. art. 2329 that any matrimonial agreement entered into during the marriage to modify or terminate a matrimonial regime must be by joint petition, and after a finding by the court that the agreement serves the best interests of the parties. For these reasons, the ruling of the trial court is reversed, and the premarital matrimonial agreement between these parties is declared to be null and void ab initio. Costs of these proceedings are assessed against the appellee, Mr. Muller.

REVERSED

EDWARDS, J., dissents.
McMANUS, J., dissents for the reasons assigned by Judge EDWARDS, C.J.
CRAIN, J., P.T., dissents for the reasons assigned by Judge EDWARDS, C.J.

. See, La. C.C.P. art. 1971.

. 95-683 (La.App. 5 Cir. 12/13/1995), 666 So.2d 1181, writ denied, 96-131 (La.3/8/1996), 669 So.2d 395.