ROBERT M. MURPHY, Judge.
12AppelIant, Timothy Benedetto, appeals the. trial court’s March 13, 2015 judgment *346 finding that the matrimonial agreement providing for a separate property regime, and the joint petition to terminate community property regime and enter into separate property regime, executed by Mr. Be-nedetto and appellee, Susan Benedetto, during their marriage, are valid. For the reasons that follow, we affirm the judgment of the trial court.
FACTUAL AND PROCEDURAL BACKGROUND
The parties, Timothy Benedetto and Susan Benedetto, were married on April 27, 1985 in Ville Platte, Louisiana. On February 24, 1988, Mr. and Mrs. Benedetto entered into an agreement titled, “Community Property Settlement and Matrimonial Agreement Providing for Separate Property Regime” (“the Agreement”), which was signed by both parties before a notary public and two ^witnesses. The Agreement provides that Mr. and Mrs. Benedet-to desire to terminate their existing community propei’ty regime and to establish a separate property regime.
On that same date, Mr. and Mrs. Bene-detto also signed a “Joint Petition to Terminate Community Property Regime and Enter into Separate Property Regime” (“the Joint Petition”), seeking a judgment from the trial court granting them court approval to enter into the Agreement. In the Joint Petition, Mr. and Mrs. Benedetto stated that they “understand the governing principles and rules of the proposed marriage contract and feel that such contract is in their best interest within the contemplation of Louisiana Revised Civil Code Article 2329, and other applicable Louisiana law.” In addition, the parties attached an affidavit, signed and notarized on February 24, 1988, averring that they have read the Joint Petition and all attachments, and that they understand the governing principles and rules set forth therein (“the Affidavit”).
On February 26, 1988, Gary J. Ortego, attorney at law, mailed a letter to the clerk of court for the 24th Judicial District Court, requesting that the Joint Petition be filed into the district court’s records and forwarded to the appropriate judge for signature. On March 4, 1988, the Joint Petition, the Affidavit, and the Agreement were all filed into the record of the case titled, In the matter of Timothy Anthony Benedetto and Susan Marie Vidrine Bene-detto, 24th JDC, Case No. 359-287. Although the record in case number 359-287 does not contain a minute entry indicating a hearing related to the Joint Petition, the trial judge signed a judgment in case number 359-287 on March 9, 1988 providing as follows:
This matter being heard by the Court and after considering the law, evidence and argument of the parties and the Court having questioned petitioners herein and having satisfied itself that petitioners understand the governing rules and principles of the proposed marriage contract and further finding that such contract is in the best | interests of the petitioners herein within the contemplation of Louisiana Civil Code Article 2329 and other applicable Louisiana law:
IT IS ORDERED, ADJUDGED AND DECREED that petitioners, Timothy Anthony Benedetto and Susan Marie Vidrine Benedetto, be and they are hereby granted Court approval to terminate the existing community property regime, dividing the existing community property as is set out in the proposed marriage contract and they are hereby additionally granted Court approval to enter into said separate property regime.
*347 On February' 27, 2014, Mrs. Benedetto filed for divorce. After' filing an answer and reconventional demand, Mr. Benedetto filed a petition for declaratory judgment on January 13, 2015, seeking to have the Agreement and the Joint Petition declared “null and void, and without legal effect,” due to Mrs. Benedetto’s failure to strictly adhere to the requirements of La. C.C. art. 2329. In his petition, Mr. Benedetto alleged the following: (1) that he and Mrs. Benedetto signed the Agreement and the Joint Petition; (2) that counsel for Mrs. Benedetto, Mr. Ortego, prepared the Agreement and mailed it along with the Joint Petition to the trial court, requesting that they be submitted to the judge for signature; and (3).that the .trial court signed the March 9, 1988 judgment approving the Agreement without first conducting a hearing.
At the hearing on Mr. Benedetto’s petition for declaratory judgment, Mrs. Bene-detto testified that both she and Mr. Bene-detto consulted an attorney to prepare the Joint Petition, but that she believed that the attorney acted as a notary. Mrs. Be-nedetto recalled that both she and Mr. Benedetto signed the Joint Petition and the Agreement after their marriage. She explained that after various business deals between Mr. Benedetto and his parents failed, she and Mr. Benedetto decided to enter into a separate property regime in an effort to protect their family home, which was owned by Mr. Benedetto, from being seized by Mr. Benedetto’s creditors. Mrs. Benedetto testified that approximately three weeks after the trial | Bcourt signed the March 9,1988 judgment approving the Agreement, Mr. Benedetto transferred his ownership of the family home located at 4537 Glendale Street, Metairie, Louisiana, to Mrs. Benedetto, as shown by the April 8, 1988 act of sale that she offered into evidence. The act of sale further provides that the parties have “judicially renounced the community property regime by judgment dated March 4, 1988,[1] in proceeding number 359-287, in Division “J” of the 24th Judicial District Court for the Parish of Jefferson, of the State of Louisiana.” When asked if she recalled whether she or Mr. Benedetto were questioned by the judge in March of 1988 as to their understanding of the Joint Petition and the •Agreement, Mrs. Benedetto testified that she could not recall whether they appeared before the trial judge in March of 1988.
Mr. Benedetto testified that he and Mrs. Benedetto were never questioned by the judge,, as to their understanding of the Joint Petition and the Agreement. Mr. Benedetto admitted to signing the Joint Petition in March of 1988 indicating that he understood the Agreement and that it was in his best interest, but testified at the hearing that he never fully understood what he, was signing and that he first realized that he and Mrs. Benedetto were not in a separate -property regime during the course of their. divorce proceeding. Mr. Benedetto further recalled that Mrs. Benedetto’s attorney prepared the Agreement and the Joint Petition; that he and Mrs. Benedetto signed the Joint Petition, the Agreement, -and the Affidavit after their marriage; and that.he was aware of the March 9,1988 judgment at the -time he signed the-act of-sale transferring his- separate property to Mrs. Benedetto in April of -1988. -Mr. Benedetto .testified that he and Mrs. Benedetto decided to enter into a *348 separate property , agreement to protect their assets from creditors.
| f,After the hearing on the declaratory judgment, the trial court entered a judgment and written reasons on March 13, 2015, finding the Agreement and the Joint Petition to be valid. The trial court found that the Agreement was in conformity with La. C.C. art. 2331 because it was an authentic act signed by both Mr. and Mrs. Benedetto, before a notary public and two witnesses. The trial court further concluded that there was no requirement under La. C.C. art. 2329 for spouses to personally appear before the trial court when seeking court approval to terminate the matrimonial regime during the marriage. Rather, the trial court held that La. C.C. art. 2329 only requires (1) a joint petition, and (2) a finding by the court that the matrimonial agreement serves the parties’ best interests, and that the parties'understand the governing principles and rules. Accordingly, the trial court held as follows:
In arguendo, even if the Judge failed to question [Mr. and Mrs. Benedetto], both parties signed the Joint Petition stating that ‘ they understood the governing rules and principles and believed the Agreement was in their best interests. The Judge could ascertain that the parties read and understood the Agreement and the Joint Petition that they both signed. Signatures are not ornaments. Therefore, based upon the language in the Agreement and Joint Petition, the Judge found that [Mr. and Mrs. Bene-detto] understood the governing rulés and principles of the proposed marriage contract and that the Agreement was in the’best interests of [Mr. and Mrs. Be*-nedetto].
Based upon the foregoing, the trial court determined that the Agreement and Joint Petition were in compliance with the requirements of La. C.C. arts. 2331 and 2329, and thus, the parties validly, terminated the matrimonial regime and entered into a separate property regime, as set forth in the March 9, 1988 judgment. Mr. Benedetto’s appeal now follows.
LAW AND DISCUSSION
■On* appeal, Mr. Benedetto' contends that the trial court erred in finding that the Agreement and the Joint Petition are valid where (1) .the parties were not ^represented by counsel; and (2) the trial court failed to conduct a hearing to determine whether the termination of the matrimonial regime served the parties’ best interest, or whether they understood .the governing principles and rules. ■
“A matrimonial agreement is a contract establishing a regime of separation of property or modifying or terminating the legal regime.” La. C.C. art. 2328. Under La.’ C.C. arts. 2329 and 2331, parties may enter into a matrimonial agreement either before or during marriage concerning all matters not prohibited by public policy. Rush v. Rush, 12-1502 (La.App. 1. Cir 3/25/13), 115 So.3d 508, 511, writ denied, 13-0911 (La.5/31/13), 118 So.3d 398. Due to the strong legislative policy against spouses giving up their community rights during marriage without judicial supervision, the formalities of Article 2329 must be construed stricti juris. Id. at 512.
La. C.C. art. 2331 requires matrimonial agreements to be made by authentic act or by an act under private signature duly acknowledged' by the spouses. Under La. C.C. art. 2329, matrimonial agreements that modify or terminate the matrimonial regime during iharriage, can be made “only upon joint petition and a finding by the court that this serves their best interests "and that they understand the governing principles and rules.” (Emphasis added). '
*349 The First Circuit in, In re Boyer, 616 So.2d 730, 732 (La.App. 1 Cir.1993), writ denied, 620 So.2d 882 (La,1993), addressed the issue of whether a tidal court’s failure to hold a hearing with the parties prior to approving a matrimonial agreement terminating the community regime is an absolute nullity. In Boyer, the First Circuit provided the following:
Clearly, article 2329 imposes certain procedural limitations on the spouse’s ability to implement a contract for the termination of the legal regime during their marriage. The trial court must be satisfied that the spouses both agree to the change, that the spouses understand the rules and principles underlying a change in the matrimonial | ^regime, and that the agreement appears to serve the best interest of the spouses.
The probable goal of the limitations appears to be the legislature’s attempt to protect the less worldly spouse and to prevent that spouse from entering into disadvantageous agreements that the spouse did not fully understand. However, the best interest requirement, under traditional Civil Code analysis, does not dictate perfect symmetry in the agreement concerning assets or opportunities, if both spouses freely consented to the agreement.' Neither should the agreement be judged baséd on a hindsight view of the success of various assets or opportunities.
Id. at 732 [citations omitted]. After considering the relevant authority, the First Circuit held that there is no requirement under La. C.C. art. 2329 for a hearing before, the trial court, can grant court approval of a matrimonial agreement terminating the matrimonial regime during the marriage, finding that “[cjertain statutory laws in Louisiana do require a full hearing before a trial court can make a decision, but article 2329 is not one of them.” Id. at 733.
Similarly, in Trahan v. Trahan, 12-173 (La.App. 3 Cir. 6/6/12), 91 So.3d 1291, although the Third Circuit ultimately found that the statutory requirements of La. C.C. art. 2329 had not been satisfied under the facts before it, the court nonetheless emphasized that “it is clear that a hearing is not required,” given that “the law provides no procedural instruction as to how a trial court should ascertain the best interests of the parties or their knowledge of governing principles or rules.”
In Olson v. Olson, 48,968 (La.App. 2 Cir. 4/23/14), 139 So.3d 539, 543, writ granted, 14-1063 (La.10/3/14), 149 So.3d 275, writ denied, 14-1063 (La.1/28/15), 159 So.3d 448, the defendant sought to nullify an agreement terminating the matrimonial regime during his marriage, where he alleged that the trial court did not make a finding that the- agreement was in the parties’ best interests, and that the same attorney represented both parties. In declining to nullify-the agreement, |9the Second Circuit noted that the parties submitted a joint petition to the court; that the defendant signed a verification certifying to the court that the agreement was in his best interest and that he understood the principles involved; that the defendant met with an attorney who discussed the agreement with him; and that the judgment provided that the parties appeared in court and exhibited that they understood the rules and principles governing the agreement. Id. at 544. Despite its consideration of the fact that thé parties appeared before the trial court, the Olson court emphasized that the law regarding the trial court’s finding of the parties’ best interests under La. C.C. art. 2329 “does not, specify the form that the court’s, finding will take or how it must be expressed and does not require a hearing.” Id. (cit *350 ing Boyer, supra; Trahan, supra) (emphasis added).
In the instant case, Mr. Benedetto contends that the Agreement and the Joint Petition are invalid for two reasons: (1) there was no hearing to determine whether the Agreement was in the parties’ best interests, or whether they understood the governing rules; and (2) the parties were not represented by counsel. As to whether a hearing occurred prior to the judge signing the March 9, 1988 judgment, Mr. Benedetto testified that a hearing did not occur, Mrs. Benedetto testified that she could not recall: whether a hearing occurred, and the March 9, 1988 judgment provides that the parties appeared and were questioned by the judge, but does not provide a date of the hearing. Mr. Bene-detto fails to cite any authority in support of his argument that a hearing is required under La. C.C. art.’ 2329. Instead, he relies upon cases where courts have found matrimonial agreements to be invalid where the parties either failed to obtain court approval of the agreement, or where the agreements were not executed in the proper form.[2] He argues that Boyer and _J¿¡¡Olson, both of which held that a hearing is not required under La. C.C. art. 2329, are distinguishable from the instant case because the parties in those cases were represented by counsel.
As set forth in Boyer, Trahan, and Olson, we agree that the law provides no procedural instruction as to how a trial court should ascertain the best interests of the parties or their knowledge of governing principles-or-rules under La. C.C. art. 2329, and thus, We find that there is no requirement for a trial court to hold a hearing under the statutory requirements of La. C.C. art. 2329. Rather, our review shows that La. C.C. art. 2329 only requires that a matrimonial agreement terminating the matrimonial regime during the marriage be made by (1) joint petition; and (2) after a finding by the trial court that the agreement serves the best interests of the parties. See Muller v. Muller, 10-540 (La.App. 5 Cir. 6/29/11), 72 So.3d 364, 368. Based upon the foregoing jurisprudence, it is clear that regardless of whether a hearing occurred in this case, no such hearing is required in order for the trial court to ascertain the best interests of the parties, or their understanding of governing principles or rules, as set forth in La. C.C. art. 2329.
Nor do we find any requirement that the parties be represented by counsel in connection with a matrimonial agreement terminating the matrimonial regime during the marriage. Although we agree that the appellate courts in Boyer and Olson noted that the parties in those cases were repre *351 sented by counsel, they did not find that representation by counsel is among the statutory requirements of La. C.C. art. 2329, as Mr.. Benedetto contends. Mr. Be-nedetto has not cited, nor have|nwe found, any authority requiring the parties to obtain counsel, or finding a party’s lack of representation by counsel to be a basis for rendering an otherwise valid matrimonial agreement, null.
Our review of the record shows that (1) the Agreement was executed as an authentic act; (2) the parties signed and filed the Joint Petition stating that they “understand the governing principles and rules of the proposed marriage contract and feel that [the Agreement] is in their best interest within the contemplation of Louisiana Revised Civil Code Article 2329, and other applicable Louisiana law;” (3) the parties signed and filed the notarized Affidavit verifying that they have read the Joint Petition and all attachments, and that they understood the governing principles and rules set forth therein; and (4) the trial court entered a judgment finding that Mr. and Mrs. Benedetto understood the Agreement, and that it was in their best interests. Under these facts, we find that the record shows that Mr. and Mrs. Benedetto validly terminated the community property regime and entered into a separate property regime during their marriage in accordance with the requirements of La. C.C. art. 2329. Therefore, we find that the trial court properly determined- that the Agreement and the Joint Petition are valid.
Finally, in her appellee brief, Mrs. Benedetto contends that Mr. Bene-detto’s claim alleging the nullity of the Agreement and the Joint Petition has prescribed. However, we note that Mrs. Be-nedetto has not filed a formal pleading raising the exception of prescription in the appellate record,, or in the trial court record. Although counsel for Mrs. Benedetto argued the issue of prescription at the hearing on the petition for declaratory judgment, “[a]n exception of prescription presented only in' argument either, orally or by way of memorandum or brief is not sufficient.” Anderson v. May, 01-1031 (La.App. 5 Cir. 2/13/02), 812 So.2d 81, 84. An exception of prescription must be presented in a formal pleading, and 1 cannot be merely argued in brief. Hyde v. Hibernia Nat’l Bank, 584 So.2d 1181, 1184 (La.App. 5 Cir.1991). Accordingly, this issue is not properly before this Court on appeal.
CONCLUSION
, For the forqgoing reasons, we affirm the trial court’s March 13, 2015 judgment. All costs of this appeal are assessed against Mr. Benedetto.
AFFIRMED

. See Poirier v. Poirier, 626 So.2d 868 (La.App. 3 Cir.1993) (finding a matrimonial agreement to terminate the matrimonial regime during marriage to be invalid where the parties failed to file a joint petition, and there . was no finding by the trial court that the agreement was in the parties’ best interests, or that they understood the governing principles and rules); Muller v. Muller, 10-540 (La.App. 5 Cir. 6/29/11), 72 So.3d 364 (finding a premarital matrimonial agreement to terminate the matrimonial regime to be invalid where the agreement was neither an authentic act, nor an act under private signature duly acknowledged prior to the marriage); Rush v. Rush, 12-1502 (La.App. 1 Cir. 3/25/13), 115 So.3d 508 (finding a premarital matrimonial agreement to terminate the matrimonial regime to be invalid where the agreement was neither an authentic act, nor an act under private signature duly acknowledged prior to the marriage); and Deshotels v. Deshotels, 13-1406 (La.App. 3 Cir. 11/5/14), 150 So.3d 541 (finding a premarital matrimonial agreement to terminate the matrimonial regime to be invalid where the agreement was neither an authentic act, nor an act under private signature duly acknowledged prior to the marriage).