WHIPPLE, C.J.,
concurring in part arid dissenting in part.
li.I am constrained to agree with the per curiam opinion herein that because there is no executable majority, we are unable to render judgment in this case. However, as to the merits of the Burgers’ appeal, for the reasons which follow, I would find merit to their contention that the trial court erred in finding that the judgment approving the Separation of Property Agreement they executed during their marriage was void ab initio and would further remand this matter for further proceedings on the revocatory action brought pursuant to LSA-C.C. art. 2036,
Stated as succinctly as possible, the essential issue tó be resolved is this: Was the[1] trial court correct in concluding that the matrimonial agreement executed during marriage and the final judgment approving it were void ab initio solely because the action to terminate the legal regime and approve the matrimonial .agreement was not initiated by a “joint petition”?
The Burgers contend that the trial court erred in annulling as void ab initio the May 8, 2006 judgment on the basis that the proceedings in the Separation of Property proceeding did not “technically comply” with the requirements of LSA-C.C. art. 2329, asserting that: (1) the requirement of “a ‘joint’ petition merely signals that the parties are in agreement and consent to the change in the regime,” and “[tjhere is no serious dispute that Ron and Lynda Burger agreed to the termination of the legal regime in favor of a separate property regime”; (2) “[rjegardless of how the action commenced, Mr. and Mrs. Burger achieved a ‘joint’ resolution of the action by mutually consenting to the termination of the Lcommunity regime in favor of a separate property regime, as reflected in a ‘jointly’ executed matrimonial agreement by authentic act, which [the trial court] judicially approved”; and (3) if the Separation of Property Agreement and the May 8, 2006 judgment approving it are nullities, they are only relative nullities (not' absolute nullities), such that the relatively null Separation of Property Agreement is subject to confirmatiori or ratification and the relatively null judgment confirming the agreement can be nullified under LSA-C.C.P. art 2004 only upon a showing of fraud or ill practices.
“A matrimonial regime is a system of principles and rules governing the owner *86 ship and management of the property of married persons as between themselves and toward third persons.” LSA-C.C. art. 2325. A matrimonial regime may be legal, contractual, or partly legal and partly contractual, but, unless excluded by matrimonial agreement, the legal, or community property, regime governs the ownership and management of the property of married persons. LSA-C.C. art. 2326; LSA-C.C. art. 2327 and comment (a) of the 1979 Revision Comments.
Louisiana Civil Code article 2329 sets forth the method for spouses to enter into a matrimonial agreement to terminate the legal regime during marriage, providing, in pertinent part, as follows:,.
Spouses may enter into a matrimonial agreement that modifies, or terminates a matrimonial regime during - marriage only upon joint petition and a finding by the court that this .serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval.
(Emphasis added).
Clearly, LSA-C.C. art. 2329 imposes certain procedural limitations on the spouse’s ability to implement a contract for the termination of the legal regime during their marriage. It permits spouses to modify or terminate the legal regime laduring marriage only upon joint petition and approval by the trial court after making certain findings. See In Re Succession of Faget, 10-0188 (La.11/30/10), 53 So.3d. 414, 419. The trial court must be satisfied that the spouses both agree to the change, that the spouses understand the rules and principles underlying a change in the mat-, rimonial regime, and that the agreement appears to serve the best, interest of the spouses. In the Matter of Boyer, 616 So.2d 730, 732 (La.App. 1st Cir.), writ denied, 620 So.2d 882 (La.1993).
The goal of the limitations appears to be the legislature’s attempt to protect the less worldly spouse and to prevent that spouse from entering into disadvantageous agreements that the spouse did not fully understand. In the Matter of Boyer, 616 So.2d at 732 (citing Spaht and Samuel, Equal Management Revisited: 1979 Legislative Modifications of the 1978 Matrimonial Regimes Law, 40 La. L.Rev. 83, 90-91 (1979)). Thus, to complete the process, article 2329 requires a joint petition and court approval of the submitted contract or matrimonial agreement before the parties can enter into it- or, in other words, implement or participate in the agreement. In the Matter of Boyer, 616 So.2d at 732.
In support of its contention that the Burgers’ Separation of Property Agreement was absolutely null due to their failure to file a joirit petition, Radcliffe 10, both in the trial court and on appeal, has relied on the Louisiana Fifth Circuit Court of Appeal case of Muller v. Muller, 10-540 (La.App. 5th Cir.6/29/11), 72 So.3d 364. In Muller the parties entered into a matrimonial agreement before they were married, but they did not follow the formalities for an authentic act.[1] Nonetheless, because the spouses in open court admitted to their signatures on the document, the trial court conduded that the matrimonial agreement was valid as an |4act under private signature, duly acknowledged by the parties. Muller, 72 So.3d at 366.
However, on appeal, the Fifth Circuit concluded that because the parties did not duly acknowledge the agreement before they married, the premarital matrimonial agreement was not valid for failure to com *87 ply with all the formalities of LSA-C.C. art. - 2331. The court further concluded that a post-nuptial acknowledgement could not vitiate the mandate of LSA-C.C. art. 2329 that any matrimonial agreement entered into during the marriage to modify or terminate the legal regime must be by joint petition and after a finding by the court that the agreement serves the best interests of the parties. Thus, the' court declared the premarital matrimórííál agreement to be null and void ab initio. Muller, 72 So.3d at 368.
In rendering judgment revoking as void ab initio the May 8, 2006 judgment that had approved the' Burgers’ Separation of Property Agreement,' the trial court herein clearly concluded that a judgment approving a matrimonial agreement that was rendered without compliance with the requirements of LSA-C.C. art. 2329 is an absolute nullity. However, contrary to the position taken by the . Fifth Circuit in Muller, the First Circuit has held that, a failure to strictly adhere to the procedures set forth in LSA-C.C. art. 2329 creates a relative nullity subject to ratification by the parties. See Williams v. Williams, 2006-0358, p. 18 (La.App. 1st Cir.2/9/07), 2007 WL 441360, *9 (unpublished) (“[T]his court clearly determined that agreements between husband and wife which alter the ihatrimonial regime during the marriage without following the proper' requirements of LSA-C.C. art. 2329 are relative nullities, subject to confirmation or ratification.”); In the Matter of Boyer, 616 So.2d at 733 (“Even assuming, for the sake of Mrs. Boyer’s nullity argument, that the pre-approval signing created, at best, a relative nullity, the agreement was ratified by the parties after the approval was granted and the parties filed the | .¡documents in the public record.”); and Clay v. Clay, 358 So.2d 649, 651 (La.App. 1st Cir.1978) (Agreements between husband and wife that violate the provisions of LSA-C.C. art. 2329, which at the time prohibited alteration of the matrimonial regime during marriage, “although null, may be ratified by the parties subsequent to divorce.”); but see Rush v. Rush, 2012-1502 (La.App. 1st Cir.3/25/13), 115 So.3d 508, 512, writ denied, 2013-0911 (La.5/31/13), 118 So.3d 398 (wherein another panel of this’ court cited a Third Circuit opinion for the proposition that the formalities of LSA-C.C. art, 2329 must be construed stricti juris and, thus, concluded that the failure of the parties to-comply with the requirements of LSA-C.C. art. 2329 rendered the matrimonial agreement invalid as to form).[2]
*88 As this court noted in Williams, an absolutely null contract is one which violates a rule of public order, as when the object of the contract is illicit or immoral, and, as such, cannot be confirmed. LSA-C.C. art. 2030. A relatively null contract, on the other hand, violates a rule intended for the protection of private parties, as when. a party lacked capacity or did not give free consent at the time a contract is made.LSA-C.C. art. 2031. A relatively null contract, as 1 (¡opposed to an absolutely null contract, may be confirmed. LSA-C.C. art. 2031; Williams, 2006-0358 at p. 18, 2007 WL 441360 at *9. Given that the goal of the procedural requirements of LSA-C.C. art. 2329 appears to be the legislature’s attempt to protect the less worldly spouse and to prevent that spouse from entering into disadvantageous agreements that the spouse did not fully understand, In the Matter of Boyer, 616 So.2d at 732, it follows that a failure to adhere to those requirements renders the underlying matrimonial agreement and judgment approving it relative nullities.[3] See Williams, 2006-0358 at p. 18, 2007 WL 441360 at *9. Moreover, a “[rjelative nullity may be invoked only by those persons for whose interest the ground for nullity was established,” LSA-C.C. art. 2031, and, as such, in my view, cannot be invoked by Radcliffe 10 herein.
Accordingly, I would conclude that the trial court erred in ruling that the May 8, 2006 judgment approving the Separation of Property Agreement and the agreement itself were void ab initio. Thus, I would reverse the trial court’s October 30, 2013 judgment now before us on appeal, which annulled the May 8, 2006 judgment and underlying matrimonial agreement bn this technical basis.
The secondary issue in this case is: Does the record contain any facts or evidence sufficient to annul the matrimonial agreement -under the Revocatory Action provided in Civil Code Article 2036?
The Burgers contend that while Radcliffe 10 initiated this proceeding as a revo-catory action pursuant to LSA-C.C, art. 2036, it presented no proof to the trial Jjcourt to warrant annulment of the matrimonial agreement on that ground.[4] While *89 Radcliffe 10, asserts on appeal that it is unnecessary for this court to reach this issue because the trial court based its ruling on LSA-C.C. art. 2329, it nonetheless argues, apparently as an alternative basis for affirming the trial court’s judgment herein, that “[i]t is clear that the [May 8, 2006 judgment approving the Separation of Property Agreement] is óne-sided and provides no values” and that “[a]s such, it cannot be said to provide a level of solvency to support paying the creditors’ claims.”[5]
Louisiana Civil Code article 2036 provides an obligee with a procedure to annul an act of its obligor that causes or increases the obligor’s insolvency, specifically providing as follows:
An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor’s insolvency.
Thus, in order, for an obligee to annul,.an act of the obligor, he must show: (1) an act (or failure to act) of the obligor that causes or increases the obligor’s insolvency;' and (2) that the act occurred after the obligor’s rights arose. Additionally, the jurisprudence requires that the obligee must prove prejudice, injury, or damage to the obligee as a result of the act. Parish National Bank v. Wilks, 2004-1439 (La.App. 1st Cir.8/3/05), 923 So.2d 8, 15.
| sIn the instant case, there is no dispute that the act, i.e., the filing of the petition to terminate the legal regime resulting in the ■ Separation of Property Agreement and the May 8, 2006 judgment approving the agreement that, in part, transferred $251,247.00 in liquid community assets to Lynda Burger, occurred after Radcliffe 10V claims arose. The Zip Tube litigation resulting in the March 29, 2007 judgment awarding Radcliffe 10 $3-,428,000.00 in clamages was based upon actions by Ronald Burger and others that occurred in 2002 and 2003, well 'before Ronald Burger’s March 20, 2006 filing of the petition to terminaté the legal regime and subsequent signing of the Separation of Property Agreement.[6] See Radcliffe 10, L.L.C., 998 So.2d at 111.
Thus, the remaining questions are whether the act 6f the obligor caused or increased the Obligor’s insolvency and whether there was prejudice, injury, or damage to the obligee as a result of the act. Louisiana Civil Code article 2037 provides that “[a]n obligor is’ insolvent when the total of his liabilities exceeds the total of his fairly appraised assets.” A determination, of insolvency or increased insolvency is necessarily a factual determination. See Forterra Capital L.L.C. v. Mamal, Inc., 2010-0798 (La.App. 4th Cir.1/13/11), 55 So.3d 963, 9,66 (comparing balance sheets of the obligor’s assets and liabilities before and after the transfer at issue), and Louisiana Lift & Equipment, Inc. v. Eizel, 33,747 (La.App. 2nd Cir.11/1/00), 770 So.2d 859, 864-865 (noting the absence of evidence of the obligee’s assets or debts in finding no authority for the trial court to nullify the sale of an asset). Likewise, the test for determining prejudice or injury is also a factual one. Parish National Banks, 923 So.2d at 15-16.
*90 In his trial brief submitted to the trial court below in lieu of trial on the merits, Ronald Burger specifically, acknowledged that the sum owed to Radcliffe |910 as a result of the March 29, 2007 amended judgment in the Zip Tube litigation was “an astronomical amount of money that [he] cannot possibly pay.” Moreover, the Separation of Property Agreement itself provides that the sum of $251,247.00 in liquid assets of the Burgers classified as community under their previous legal regime was allocated to Lynda Burger, thus making this money unavailable to Ronald Burger’s obligees. Any diminution of Ronald Burger’s property which could have been used to satisfy the debt he owed to Radcliffe 10 was an injury to the creditor. See Thomassie v. Savoie, 581 So.2d 1031, 1035 (La.App. 1st Cir.), writ denied, 589 So.2d 493 (La.1991).
Accordingly, in this particular case, even though Radcliffe 10 offered no specific evidence that Ronald Burger’s actions in entering into the Separation of Property caused or increased his insolvency, in light of Ronald Burger’s references to his inability to pay the debt he owes to Radcliffe 10, see generally Thomassie, 581 So.2d at 1035 (noting that although the jMntiff in the revocatory action intróducéd no evidence of the value of donated property, references in the testimony to the obligee’s dire financial circumstances established his insolvency), I find that the interests of justice require a remand of this matter for further proceedings below to determine whether the Separation of Property Agreement entered into by the Burgers should be revoked pursuant to LSA-C.C. art. 2036. See LSA-C.C.P. art. 2164 (“The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.”).
For these reasons, I would reverse the trial court’s October 30, 2013 judgment, which revoked as void ab initio the May 8, 2006 judgment in the Separation of Property proceeding that approved the underlying Separation of Property Agreement entered into by Ronald and*Lynda Burger, and would remand this matter to the trial court for further proceedings on the revo-catory action brought pursuant to LSÁ-G.C. art. 2036. Accordingly, I respectfully dissent. o

. Louisiana Civil Code article 2331 requires that a matrimonial agreement “shall be made by authentic act or by an act under 'private signature duly acknowledged by'the spouses,”

. Notably Rush--is factually distinguishable from the present case. Similar to the factual scenario in Mutter, in Rush, the parties executed the matrimonial agreement prior to marriage, but it was not in authentic form due to the absence of signatures of witnesses. However, the parties later acknowledged the agreement during their marriage. This court concluded .that because the parties failed to comply with the requirements of LSA-C.C. art. 2331 prior to marriage, no valid matrimonial agreement existed at the time they entered into marriage. Rush, 115 So.3d at 512. Moreover, the court further held that mere acknowledgement of the private act during marriage could not validate the matrimonial agreement, because LSA-C.C. art. 2329, which it held must be strictly construed, mandated that spouses could modify or terminate . the legal regime during marriage by filing a joint petition and obtaining court approval. No such joint petition was filed or court approval obtained therein. Rush, 115 So.3d at 512. Given the lack of any petition or court approval, the result in Rush was supported by Poirier v. Poirier, 626 So.2d 868, 870 (La.App. 3rd Cir.1993), writ denied, 94-0161 (La.3/11/94), 634 So.2d 389, the Third Circuit case cited therein. In Poirier, while the parties stipulated to the terms of an agreement in open court, they filed no joint petition, and there was no finding by the court that the -agreement served the best interest of the parties. The Third Circuit noted, “Obviously, the legislature found many spouses possessed *88 such inferior bargaining positions, that the law could not allow them to give up their community rights without judicial supervision,” and thus found the requirements of LSA-C.C. art. 2329 to be stricti juris. Poirier, 626 So.2d at 870 (emphasis added).
However, unlike Muller, Rush, or Poirier, in the instant case, a petition was filed, ánd court approval was obtained. The only requirement of LSA-C.C. ait. 2329 not adhered to herein was the filing of the petition jointly by the parties.

. The matrimonial agreement cannot be separated from the court approval because there . can be no valid matrimonial agreement without court approval. Boyer v. Boyer, 96-0346 (La.App. 1st Cir. 1/23/97), 691 So.2d 1234, 1244, writ denied, 97-1415 (La.9/26/97), 701 So.2d 984.

. The Burgers also assert on appeal that Radcliffe 10 abandoned its claim under LSA-G.C. art. 2036 in the trial court, However, as noted in footnote 5, supra, in its trial brief below, Radcliffe 10 did assert the revocatory'action under article 2036 as an additional basis for nullifying the matrimonial agreement, albeit in a very abbreviated manner.
As stated above,- the trial court’s October 30, 2013 judgment herein revoked the May 8, 2006 judgment that had approved the Separation of Property Agreement on the basis that it was void ab initio for failure to follow the procedural requirements of LSA-C.C, art. 2329. It was silent'as to Radcliffe 10’s alternative theory that the judgment arid underlying matrimonial agreement should be revoked pursuant to LSA-C.C. art. 2037, as increasing Ronald Burger’s indebtedness. When a judgment is silent as to a claim or demand, it is presumed that the. trier of fact denied the relief sought. Parish National Bank v. Wilks, 2004-1439 (La.App. 1st Cir.8/3/05), 923 So.2d 8, 11 n. 4.

. This abbreviated argument is also the[1] entirety of its argument on this issue in its trial brief below.

. A creditor's claim does not have to be liquidated to judgment to be considered an an-tenor debt, i.e., a debt that arose before an obligor’s act that caused or increased his insolvency. Lewis v. Hood, 97-2118 (La.App. 1st Cir. 11/6/98), 721 So.2d 1078, 1080.

. The legislature allows for only two exceptions to the above requirements for modifying the matrimonial regime during marriage. Specifically, LSA-C.C. art. 2329 permits mod *91 ification without court approval when (l).the parties "subject themselves to the legal regime,” i.e., when they go from a matrimonial regime other than the community' property regime to-the community property regime, and (2) ‘‘[d]uring the first year after moving into and acquiring a domicile in this state.” Neither of these exceptions apply,