McCLENDON, J.,
concurring.
hi concur in'the result reached in the per curiam, which maintains the trial court’s judgment. Additionally, I write separately to note that I would affirm the trial court’s ruling on the merits.
The trial court held that the Burgers’ matrimonial agreement executed during marriage and the, judgment approving it were void “ab initio for failure to follow the procedural requirement for obtaining such a judgment under La. C.C. art. 2329.” More specifically, the trial court concluded that the agreement was “null and void and of no legal effect at any time” because it was not instituted by joint petition.
Louisiana Civil Code article 2329 allows spouses to enter into matrimonial agreements during marriage “only upon joint petition and a finding by the court that this serves [the parties’] best interests and that they understand the governing principles and rules.”[1] (Emphasis added.) The *91 article requires both a joint petition and two specific court determinations, i.e. that the parties understand the. law and that it is in their best interests to.terminate the matrimonial regime. When the words chosen by the legislature have clear meaning, it is not the role of the judiciary to search for “feasible arguments” .regarding legislative intent..
I must respectfully disagree with some of my colleagues to the extent that they manipulate the language of .LSA-C.C.. art. 2329 to remove the requirement of instituting Ran action by joint petition.[2] When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may, be made in search of- the intent of the legislature. LSA-C.C. art, 9. Further, the words , of a law must be given their generally prevailing meaning. LSA-C.C. art. 11. It is presumed that every word, sentence, or provision in the law was intended to servé some useful purpose; that some effect is to be-given to each such provision; and that no Unnecessary words' or provisions were used. Cleco Evangelice, LLC v. Louisiana Tax Com'n, 01-0561 (La.App. 1 Cir. 6/22/01), 808 So.2d 740, 744, affirmed by 01-2162 (La.4/3/02), 813 So.2d 351. The meaning of a statute is to be interpreted by looking to all the sections taken together so that no section,, clause, sentence-or word becomes superfluous or meaningless. Id. In essence, if court approval is the only requirement, the phrase “joint petition” becomes superfluous and is rendered meaningless. •
Even 'were we to consider intent, the procedural requirements set forth in LSA-C.C. art. 2329 have been recognized as the legislature’s attempt to protect the less worldly spouse from undue influence and to prevent that spouse from entering into disadvantageous agreements that the spouse did not fully understand. See In the Matter of Boyer, 616 So.2d 730, 732, writ denied. 620 So.2d 882 (La.1993). Further, by requiring a joint petition, Article 2329 prevents a spouse, especially a less worldly spoüse and less financially secure spouse, from being forced into an adversarial position with the other spouse.[3] Had the legislature intended to require spouses to simply obtain court approval for the modification of their matrimonial agreement, without the additional requirement of a joint petition, it could have used the less specific term “petition” rather than “joint petition.” Additionally, the *92 legislature clearly | ¡¿intended to promote the community regime by making it more difficult to confect matrimonial agreements terminating the community regime during marriage. 16 La. Civ. L. Treatise, Matrimonial Regimes § 8:6 (4th ed.).
In Rush v. Rush, 12-1502 (La.App. 1 Cir. 8/25/13), 115 So.3d 508, 512, writ denied, 13-0911 (La.5/31/13), 118 So.3d 398, this court stated that “the mere acknowl-edgement of the private act during the marriage [could not] validate the matrimonial agreement, since article 2329, which must be strictly construed, mandates that spouses can only modify or terminate, a matrimonial regime during marriage by filing a joint petition and obtaining court approval.” While I note that Rush involved a prenuptial agreement, the reasoning set forth therein is equally applicable to agreements made during the marriage.
Therefore, I find that the legislative dictates set forth ■ in Article 2329 must be strictly construed. The words of Article 2329 are clear and unambiguous. Applying these words in their usual context, it is clear that both a joint petition and judicial approval are imperative. It is not opr role to determine the wisdom of the words chosen by the legislature.
Further, the failure to comply with the strict requirements of LSA-C.C. art. 2329 renders the act absolutely null such that it cannot be confirmed. Absolute nullifies result from violations of rules of public order, while relative nullities result from rules intended for the protection of private parties.. LSA-C.C. arts.2030 and 2031. While marriage is a contract between private parties, it is not clear that a change in the matrimonial regime affects exclusively private parties. A marital property system has been recognized as a “part of a larger picture of personhood, civil status, property, and succession, and the principles and rules of a community property .regime penetrate the institutions of family, alimentary obligation, gift, inheritance, and ownership.” Michael McAuley, The Wanting of Community Property, 20 Tul. Eur. & Civ. L.F. 57, 60 (2005). As has been recognized, modification of the legal community by a matrimonial agreement would result in many non-working spouses having little or no ownership interest in assets that would form part of the community under the legal regime. ■ This would lead to a substantial weakening of the community éoneept. 16 La. Civ. L.' |/Treatise, Matrimonial Regimes § 8:6' (4th ed.). These policy concerns strengthen the argument that the failure to follow the requirements of Article 2329 violates public policy. Clearly, the strict requirements for opting out of the community property regime after marriage were meant to protect a larger class of persons and institutions.
In Muller v. Muller, 10-540 (La.App. 5 Cir. 6/29/11), 72 So.3d 364, 368, my brethren of the.Fifth Circuit explained that a matrimonial agreement that did not meet the requirements for a prenuptial agreement, because it was not in.authentic form, was void ab initio such that it could not be acknowledged during the marriage. They recognized -with regard to the requirements of article 2329 that the factual cir-cumstancés of any case “cannot act to vitiate its requirements.” Id. at 367. Specifically, the Muller court indicated:
The dictates of La. C.C. art. 2329 are not mere policy concerns, but a mandate made part of a statutory enactment that casts a suspicious eye on the establishment of a separation of property regime effected during marriage. The codal requirement that any party entering into an agreement that modified or terminates the matrimonial regime after marriage must dó so by joint petition and a finding by a court that the modification *93 is in the best interest of both parties, is without exception.
[[Image here]]
We hold that a post-nuptial acknowl-edgement Cannot vitiate the mandate of La. C.C. art. 2329 that any matrimonial agreement entered into during the marriage to modify or terminate a matrimonial regime must be by joint petition, and after a finding by the court that the agreement serves the best interests of'the parties. For these reasons, the ruling of the trial court is reversed, and the premarital' matrimonial agreement between these' parties is declared to be null and void ab initio. [Emphasis added.]
Muller, 72 So.3d at 367-68.
In light of the considerations set forth herein, I conclude that the failure to comply with the formal solemnities of Article 2329 results in an absolute nullity, not subject to confirmation. To the extent that they hold otherwise, I would overrule Williams v. Williams, 06-0358 (La.App. 1 Cir. 2/9/07), 2007 WL 441360 (unpublished), In the Matter of Boyer, 616 So.2d 730, writ denied, 620 So.2d 882 (La.1993), and Clay v. Clay, 358 So.2d 649 (La.App. 1 Cir.1978).

. It is undisputed that this matter was not instituted by a joint petition, but rather by Mr. Burger's petition including a rule to show cause, which the code of civil procedure recognizes as "a contradictory, motion”. LSA-C.C.P. art. 963. Even if we could interpret the rule to show' cause as a joint petition, as suggested by one of my colleagues, Mrs. Burger did not "join” in petitioning the court. Rather, the only action taken by Ms. Burger .was a waiver of service of process in which she requested a notice of any trial date. Irrespective of‘what Ms. Burger may have later agreed to,- she never jointly petitioned the court for the termination of the community regime. Further, requiring a joint petition does not add an "unwaivable and uncurable” pleading requirement to Article 2329, as suggested by one of- the dissents. Clearly, the parties can cure-this defect by initiating a new action by j oint petition.

. A failure to require a joint petition would allow one spouse to institute proceedings against'the other spouse with no prior agreement between the spouses. Arguably, this would be detrimental to the harmony of the marriage.